1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE PATTON BOGGS (US) LLP
Adam R. Fox (State Bar # 220584)
adam.fox@squirepb.com
555 South Flower St., 31st Floor
Los Angeles, CA 90071
Telephone: (213) 624 2500
Facsimile: (213) 623 4581

SQUIRE PATTON BOGGS (US) LLP
Scott A. Kane (Admitted *Pro Hac Vice*)
scott.kane@squirepb.com
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201

*Counsel for The Procter & Gamble Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY BOUNTHON, ET AL., <br><br> Plaintiff, <br><br> v. <br><br> THE PROCTER & GAMBLE COMPANY, <br><br> Defendant. | Case No. 3:23-cv-00765-AMO <br><br> **DEFENDANT THE PROCTER & GAMBLE COMPANY'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> Judge: The Honorable Araceli Martinez-Olguín <br> Date:  May 30, 2024 <br> Time:  2:00 p.m. |

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................. ii

I.       INTRODUCTION ............................................................................................................. 1

II.      ARGUMENT ..................................................................................................................... 2

         A.       Plaintiffs Fail to Plausibly Allege the Product Contains Potentially Harmful
                  PFAS ...................................................................................................................... 2

                  1.       The Opposition Fails to Defend the SAC's Lack of Well-Pleaded
                           Facts ............................................................................................................ 2

                  2.       Plaintiffs' Implausible Testing Allegations Cannot Avoid Dismissal ........ 5

         B.       Plaintiffs Fail to Plead Article III Standing........................................................... 8

         C.       The Challenged Statements Cannot Mislead a Reasonable Consumer................. 10

         D.       Plaintiffs Fail To Allege An Omission Claim With Particularity ........................ 12

         E.       Plaintiffs Fail to Plead Facts Alleging Reliance With Particularity..................... 12

         F.       Plaintiffs' "Unlawful" UCL Claim Fails for Additional Reasons ....................... 13

         G.       The Unjust Enrichment Claim Fails...................................................................... 14

         H.       Plaintiffs Cannot Represent Out-of-State Class Members.................................... 15

III.     CONCLUSION ................................................................................................................ 15

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS - 3:23-CV-00765-AMO

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Amin v. Subway Restaurants, Inc.*,
5    No. 21-CV-00498-JST, 2021 WL 11680840 (N.D. Cal. Oct. 7, 2021) ................................. 14

6

*Andrews v. Procter & Gamble Co.*,
    Case No. 19-00075, 2019 WL 6520045 (C.D. Cal. June 3, 2019) ................................. 3, 7, 8
7

8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 12
9

*Astiana v. Hain Celestial Grp., Inc.*
10    783 F.3d 753 (9th Cir. 2015) ..................................................................................... 14

11

*Blain v. Liberty Mut. Fire Ins. Co.*,
    No. 22-CV-0970-AJB-DEB, 2023 WL 2436003 ............................................................. 15
12

13

*Bowen v. Energizer Holdings*,
    No. CV 21-4356-MWF (AGRx), 2023 WL 1786731 (C.D. Cal. Jan. 5, 2023) ...................... 9
14

*Coffelt v. Kroger Co.*,
15    EDCV 16-1471 JGB (KKx), 2018 WL 6004543 (C.D. Cal. Aug. 17, 2018) ........................ 9

16

*Cook, Perkiss & Liehe, Inc. v. N. Cali. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) ..................................................................................... 11
17

18

*Dalewitz v. P&G Co.*,
    No. 7:22-cv-07323, 2023 WL 6215329 (S.D.N.Y. Sept. 22, 2023) ............................... 7, 8
19

20

*Dawood v. Gamer Advantage LLC*,
    No. 2:22-CV-00562-WBS-KJN, 2022 WL 3108846 (E.D. Cal. Aug. 4, 2022) ...................... 9

21

*Doss v. Gen. Mills, Inc.*,
    No. 18-61924-CIV, 2019 WL 7946028 (S.D. Fla. June 14, 2019) *aff'd*, 816
22    F.App'x 312 (11th Cir. 2020) ...................................................................................... 9

23

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) .................................................................................... 5
24

25

*Freund v. HP, Inc.*,
    No. 22-CV-03794-BLF, 2023 WL 187506 (N.D. Cal. Jan. 13, 2023) ............................... 15

26

*Griffin v. Univ. Cas. Co.*,
27    654 N.E.2d 694 (Ill. Ct. App. 1995) ........................................................................... 15

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
    No. 19-CV-1345 DMS (AGS), 2020 WL 6106813 (S.D. Cal. Apr. 27, 2020) .................... 12

*Hamman v. Cava Grp., Inc.*,
    No. 22-CV-593-MMA (MSB), 2023 WL 3450654 (S.D. Cal. Feb. 8, 2023)........................ 12

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
    No. 09-cv-1597, 2010 WL 3448531 (N.D. Cal. Sep. 1, 2010) ........................................ 10, 13

*Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*,
    No. 18-CV-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ................................. 14

*Jones v. Regents of Univ. of Cal.*,
    No. 21-CV-07844-JSW, 2022 WL 1137089 (N.D. Cal. Apr. 18, 2022) *appeal
    dismissed*, No. 22-15750, 2023 WL 7480118 (9th Cir. June 6, 2023) .................................. 2

*Jones v. Regents of Univ. of Cal.*,
    No. 21-CV-07844-JSW, 2022 WL 1137089 (N.D. Cal. Apr. 18, 2022), *appeal
    dismissed*, No. 22-15750, 2023 WL 7480118 (9th Cir. June 6, 2023) .................................. 4

*Kanan v. Thinx, Inc.*,
    No. CV-20-10341 JCV, 2021 WL 4464200 (C.D. Cal. June 23, 2021) ............................... 6, 9

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).................................................................................................. 13

*Klammer v. Mondelez Int'l, Inc.*,
    No. 22-CV-02046-JSW, 2023 WL 105095 (N.D. Cal. Jan. 4, 2023) ............................. 10, 11

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005).................................................................................................... 3

*Krakauer v. Recreational Equip., Inc.*,
    No. C22-5830 BHS, 2024 WL 1494489 (W.D. Wash. Mar. 29, 2024)........................... 4, 7, 8

*Lopez v. Zarbee's Inc.*,
    No. 22-cv-04465-CRB, 2023 WL 210878 (N.D. Cal. Jan. 17, 2023) ...................................... 15

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006)...................................................................................................... 5

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021)....................................................................................................... 11

*Oliveira v. Amoco Oil Co.*,
    776 N.E.2d 151 (Ill. 2002) ....................................................................................................... 15

*In re OnStar Contract Litig.*,
    278 F.R.D. 352 (E.D. Mich. 2011) .......................................................................................... 15

iii

*In re Plum Baby Food Litig.*,
  No. 4:21-CV-913-YGR, 2022 WL 16640802 (N.D. Cal. Sept. 3, 2021)
  *reconsideration denied*, No. 4:21-CV-00913-YGR, 2023 WL 3493319 (N.D.
  Cal. May 3, 2023) ............................................................................................... 9

*Robie v. Trader Joe's Co.*,
  No. 20-cv-07355 JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021) .................................. 5

*Solis v. Coty, Inc.*,
  No. 22-CV-0400-BAS-NLS, 2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) ........................... 14

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020)........................................................................................ 15

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d
  1187 (9th Cir. 2001) ...................................................................................... 1, 3, 5

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ..................................................................................... 6

*Sultanis v. Champion Petfoods USA Inc.*,
  No. 21-CV-00167-EMC, 2021 WL 3373934 (N.D. Cal. Aug. 3, 2021)........................... 15, 16

*Tabler v. Panera LLC*,
  No. 19-CV-01646-LHK, 2020 WL 3544988 (N.D. Cal. June 30, 2020) ........................... 13

*Tisnado v. United States*,
  547 F.2d 452 (9th Cir. 1976)........................................................................................ 4

*Vaccarino v. Midland Life Ins. Co.*,
  No. CV 11-05858 CAS, 2011 WL 5593883 (C.D. Cal. Nov. 14, 2011) ........................... 13

*Walsh v. Nev. Dep't of Human Res.*,
  471 F.3d 1033 (9th Cir. 2006)................................................................................... 2, 4

*Warren v. Whole Foods Mkt. Cali., Inc.*,
  No. 21-cv-04577, 2022 WL 2644103 (N.D. Cal. July 8, 2022)............................................. 6

*Wilson v. ColourPop Cosmetics, LLC*,
  No. 22-CV-05198, 2023 WL 6787986 (N.D. Cal. Sept. 7, 2023), *appeal
  dismissed*, No. 23-2627, 2023 WL 9112928 (9th Cir. Dec. 20, 2023) .................................. 10

*Wilson v. Hewlett–Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012)..................................................................................... 12

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) .......................................................................... 8

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS - 3:23-CV-00765-AMO

**Statutes**

Cal. Health & Safety Code §§ 110100, *et seq.*.................................................................. 13

Minn. Stat. § 325F.67................................................................................................. 15

Minn. Stat. § 325F.69(1).............................................................................................. 15

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................................... 13

Fed. R. Civ. P. 23 ....................................................................................................... 15

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS - 3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

## I.   **INTRODUCTION**

Plaintiffs' Second Amended Complaint, ECF No. 67 ("SAC"), alleges that certain Tampax tampons ("Products") contain sufficient levels of dangerous per- and polyfluoroalkyl substances ("PFAS") to render their packaging statements misleading and the Products unfit for their intended use. But these allegations are not premised on well-pleaded facts. Instead, the SAC relies on speculative and conclusory assertions undermined—and in some cases contradicted—by the very sources Plaintiffs sprinkle throughout their pleading in an apparent effort to make it seem as though it enjoys evidentiary support. As the Ninth Circuit has explained, "a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). That is precisely what Plaintiffs have done here, warranting dismissal of the SAC.[1]

Indeed, despite page after page of sweeping allegations about PFAS in the Products, the SAC cannot escape Plaintiffs' decision to premise those allegations on testing for total organic fluorine ("TOF"), rather than any PFAS. This choice is dispositive because the SAC also cites sources that expose TOF tests as registering positive results for many fluorinated compounds other than PFAS. *See* Request for Judicial Notice ("RJN"), ECF No. 72, Ex. F at 17095. Plaintiffs have accordingly pleaded themselves out of a claim. The SAC likewise avers that health dangers result from exposure to *all* PFAS, but cites sources that reveal the research in humans at most *"suggests"* only that "*high* levels of *certain* PFAS **may** lead to" negative health consequences. *Id.*, Ex. C at 2 (italics added; bold original). Rather than allege facts showing *any* levels of *any* PFAS in the Products capable of *any* specific adverse health condition, Plaintiffs obfuscate by pleading that their (inadequate) TOF results show levels around 30 ppm. And even if these TOF test results were a good proxy for PFAS, sources Plaintiffs cite characterize levels more than *three times* as high as a mere "trace" amount. *Id.*, Ex. F at 17095. Plaintiffs also cite sources disclosing the ubiquity of

---

[1] Quixotically, Plaintiffs chastise P&G for not seeking to "dismiss Plaintiffs' causes of action on the merits," which Plaintiffs characterize as a tacit admission that the Products contain PFAS. Opp'n to Mot. to Dismiss ("Opposition"), ECF No. 73, at 1:20-23. Of course, P&G is not permitted to contest facts in opposing a motion to dismiss, but to be crystal clear, P&G denies making any tacit admission and reiterates that it does not add PFAS to the Products, either for "hydrophobic and oleophobic properties" (Opp. at 3:28) or any other reason.

PFAS in water, soil, and air, *id.*, Ex. B at 2-3, rendering speculative and implausible the SAC's separate allegation that Defendant intentionally added PFAS to the Product.

Plaintiffs' stacked inferences are thus undermined again and again by the very sources they chose to cite in their SAC. Defendant's Motion to Dismiss the SAC, ECF No. 71 (the "<u>Motion</u>") detailed these pleading defects, and also cited the numerous other cases that have rejected similar claims based on similarly inapposite testing. Although the Opposition quibbles with the applicability of some of the cases, it ignores entirely the dispositive pleading failure arising from Plaintiffs' tactical choice to cite contradictory sources. As a matter of law, Plaintiffs' silence effectively concedes the point and operates as a waiver. *See Jones v. Regents of Univ. of Cal.*, No. 21-CV-07844-JSW, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022) *appeal dismissed*, No. 22-15750, 2023 WL 7480118 (9th Cir. June 6, 2023) (dismissing case by treating "Plaintiff's failure to oppose Defendants' arguments as a concession that those claims should be dismissed"); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (deeming the failure to address an issue in opposition as waiver).

No matter how many times the SAC pleads the conclusion that Plaintiffs' TOF testing indicates the presence of a dangerous PFAS at material levels sufficient to render the Product's packaging inadequate or misleading, it is not a well-pleaded fact. Plaintiffs chose to cite numerous sources that refute this conclusion and undermine virtually every significant assertion they make, and have accordingly pleaded themselves out of a claim. Plaintiffs' silence and further repetition of their unsupported allegations cannot salvage this suit. In short, as set forth in the Motion and discussed in more detail below, the Court should dismiss the SAC with prejudice to refiling.

## II.   **ARGUMENT**

### A.   **Plaintiffs Fail to Plausibly Allege the Product Contains Potentially Harmful PFAS**

#### 1.   The Opposition Fails to Defend the SAC's Lack of Well-Pleaded Facts

Whenever a court considers whether a claim or injury is "plausible" (instead of merely "possible"), it should reject or ignore conclusory allegations, particularly those "that contradict matters properly subject to judicial notice," such as "documents referred to in a complaint." *Sprewell*, 266 F.3d at 988. In performing this task, courts routinely "take into account documents

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1  whose contents are alleged in a complaint and whose authenticity no party questions, but which are

2  not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th

3  Cir. 2005); *see also, e.g., Andrews v. Procter & Gamble Co*., No. 19-00075, 2019 WL 6520045, at

4  *1 (C.D. Cal. June 3, 2019) (taking judicial notice of contradictory sources discussed in complaint

5  but "not physically attached [to] the pleading."); RJN at 1-3. In this case, numerous allegations

6  made by Plaintiffs are contradicted by the sources upon which they purport to rely, warranting

7  dismissal. Consider the following key examples:

8  • **The SAC alleges**: "[A]ll PFAS are harmful." SAC ¶ 63; *see also id*. ¶¶ 11, 101.

9      o   ***The contradictory sources***: Plaintiffs cite a source refuting this notion, and observing only

10         that "[r]esearch involving humans *suggests* that *high levels* of *certain* PFAS **may** lead to"

11         negative health consequences. RJN, Ex. C at 2 (italics added; bold original); *see also id*.,

12         Ex. B, at 3 ("research *suggests* that exposure to *certain* PFAS *may* lead to adverse health

13         effects") (emphasis added).

14      o   *Compare* Mot. at 3:1-4:28 (setting forth contradictory sources), *with* Opp. at 4:1-8:28

15         (relying on conclusory SAC allegations and ignoring contradictory sources).

16  • **The SAC alleges**: "The amount of PFAS detected in the Tampon Product samples was above

17     trace amounts," specifically based on "Plaintiffs' TOF testing indicat[ing] a total PFAS

18     concentration of more than 30 PPM in some of the individual components, with much higher

19     concentrations of PFAS in the aggregate," levels that "are significant, as even 'near zero'

20     amounts of PFAS can pose a danger to health." SAC ¶¶ 108-109.

21      o   ***The contradictory source***: The SAC cites a study that identifies TOF measurements below

22         100 PPM as showing, at most, "trace concentrations of PFAS," and characterizing products

23         with levels in that range as "healthier" and even PFAS-"free." RJN, Ex. F at 17091, 17095.

24      o   *Compare* Mot. at 2:3-11, 12-13 (setting forth contradictory sources), *with* Opp., Section

25         II.A-B (relying on conclusory SAC allegations and ignoring contradictory sources).

26  • **The SAC alleges:** TOF is the "gold standard" of PFAS testing and "it is extremely unlikely (if

27     not impossible) that TOF testing would yield a 'false positive' for PFAS," as organic fluorine

28     is "practically nonexistent outside of its use in synthetic PFAS chemicals." SAC ¶¶ 12, 93-94.

3

o ***The contradictory sources:*** The SAC cites a TOF testing study, in which the authors identify a "limitation" of such tests as that they "may detect organofluorine chemicals that are not PFAS." RJN, Ex. E at 7. Another SAC source similarly notes that TOF testing must account for "other organic fluorinated chemicals," including certain common pharmaceuticals that do not contain PFAS. *Id*., Ex. F at 17095. Yet another source in the SAC notes that a "targeted PFAS analysis" is "***necessary***" to confirm that the "total fluorine measured originally comes from the use of . . . . PFAS." *See id*., Ex. G at 3. And another notes "the number of compounds containing fluorine is increasing in pharmaceutical drugs and organic electronics materials" and "there have been about 30 natural products discovered that contain C-F bonds. RJN, Ex. H, at 1.

o *Compare* Mot. at 5:9–22, 9:6–11:8 (setting forth contradictory sources), *with* Opp. at 6:11-8:18 (relying on conclusory SAC allegations and ignoring contradictory sources).

Although the moving papers identified these and other key contradictions between the SAC's allegations and the sources Plaintiffs cited in purported support, the Opposition fails to address Defendant's argument that the Court should dismiss the SAC on this basis. That is, Plaintiffs continue to rely on their conclusory and contradicted allegations about the presence of PFAS. *See Krakauer v. Recreational Equip., Inc.*, No. C22-5830 BHS, 2024 WL 1494489, at *6 (W.D. Wash. Mar. 29, 2024) ("To the extent [plaintiff] alleges that all PFAS are dangerous at any level sufficient to cause injury, this allegation is conclusory and contradicted by some of the sources that [plaintiff] himself cites."). By failing to do so, Plaintiffs effectively concede that their own pleading choices warrant dismissing the SAC because they have not adequately alleged the presence of PFAS. *See Tisnado v. United States*, 547 F.2d 452, 457 (9th Cir. 1976) (explaining that a party who "do[es] not attempt to contest" an adversary's argument "conced[es] the point"); *see also Walsh*, 471 F.3d at 1037; *Jones*, 2022 WL 1137089, at *2 (if an opposition to a motion to dismiss "fails to substantively address [d]efendant's arguments . . . and instead largely copies and pastes allegations from the [complaint]," that tactical decision effectively operates "as a concession that those claims should be dismissed").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Based on these governing authorities, Plaintiffs' silence is akin to an admission that notwithstanding their bare allegations, the true facts revealed by the sources they cite are that: (1) only a small number of the thousands of PFAS are even suspected of potentially harming humans, and even then only with a sustained exposure above certain thresholds not alleged in the SAC (RJN, Ex. C at 2); (2) the TOF test Plaintiffs advance as a purported "proxy" for PFAS testing is insufficient to demonstrate the presence of any PFAS in the Product, let alone a type potentially linked to harm (*id.*, Ex. G at 3); and (3) even assuming Plaintiffs' TOF test results were an accepted proxy for PFAS (they are not), the 30 ppm level alleged in the test results is less than a third of even "trace" amounts (*id.*, Ex. F at 17095).[2]   These concessions doom each claim in the SAC.

2.   Plaintiffs' Implausible Testing Allegations Cannot Avoid Dismissal

In an effort to avoid the contradictions between the sources they cite and their conclusory pleading, Plaintiffs contend that any arguments concerning "testing methodologies" or "analytical findings" are not appropriate to raise at the pleading stage. *See* Opp. at 5:25-27. This simplistic notion ignores the realities of federal litigation, as demonstrated by governing case law. *See, e.g., Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011) ("Although factual allegations are taken as true, we do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations'") (citation omitted); *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (on a motion to dismiss, the "Court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document"); *Sprewell,* 266 F.3d at 988 (holding that "a plaintiff can . . . plead himself out of a claim by including unnecessary details contrary to his claims"); *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir. 1998) (rejecting "conclusory allegations . . . contradicted by documents referred to in the complaint").

Without confronting a single one of these binding authorities, each of which was cited in the Motion, Plaintiffs attempt to support their distorted rendition of the law by citing a handful of

---

[2] Without alleging specific results, Plaintiffs' allegation that that product contained "much higher concentration of PFAS in the aggregate" is too vague to save their claims. Opp. at 8:13-15; *Robie v. Trader Joe's Co.*, No. 20-cv-07355 JSW, 2021 WL 2548960, at *5 n.1 (N.D. Cal. June 14, 2021) (rejecting false advertising claims because allegations a product labeled "Vanilla Flavored With Other Natural Flavors" contained ethyl vanillin failed to allege specific amount of vanillin found and thus could not plausibly allege the amount detected was "material or significant" to their claims).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

district court opinions, the holdings of which they misapprehend. For example, Plaintiffs contend that *Warren v. Whole Foods Mkt. Cali., Inc.*, No. 21-cv-04577, 2022 WL 2644103 (N.D. Cal. July 8, 2022), supports the plausibility of their test results because the court rejected the defendant's argument that such tests lacked sufficient detail. Whatever may have been lacking, the plaintiff in *Warren* pleaded having actually tested for the very component at issue there: artificial vanilla flavor derived from ethyl vanillin. *Id.* at *5-6. In contrast, Plaintiffs here complain about the purported presence of dangerous PFAS, but tested only for the presence of a distinct compound—TOF— which their cited sources say is not a reliable indicator.[3] *See* RJN, Ex. F at 17096 (TOF detected could be indicative of other, non-PFAS compounds with carbon-fluorine bonds). Indeed, Plaintiffs' cited sources go one step further, advising that targeted PFAS testing is "necessary" to confirm any TOF measured is derived from PFAS. *See id.*, Ex. G, at 3.

Plaintiffs also cite *Kanan v. Thinx, Inc.*, No. CV-20-10341 JCV (JRPx), 2021 WL 4464200 (C.D. Cal. June 23, 2021). In that case, the complaint survived defendant's motion to dismiss because plaintiff had specifically alleged having conducted tests showing defendant's product contained "short-chain PFAS chemicals . . . at material and above trace amounts." *Id.* at *1, 4. Moreover, the opinion provides no indication that the plaintiff in that case had cited materials that in any way undermined her allegations about the materiality of these levels or that all PFAS "pose[d] similar health risks." *Id.* at *1. Plaintiffs in this case made a strategic choice to litter their SAC with citations—perhaps to make it seem as though its allegations had ample scientific support—but those citations actually undermine and contradict Plaintiffs' allegations. This is not a matter of a dispute between Plaintiffs' allegations and facts advanced by Defendant. This is a case in which Plaintiffs, by their own pleading choices, submitted to the Court specific references to sources that substantively refute their own allegations. Ninth Circuit law is crystal clear that the appropriate response in such circumstances is dismissal.

---

[3] *Warren* is inapposite for the independent reason that the plaintiff's test of the defendant's product yielded results showing a concentration of artificial vanilla more than "three hundred times higher" than an amount rejected as immaterial in another ethyl vanillin case. Even if the TOF test conducted by Plaintiffs accurately disclosed PFAS, the alleged level of 30 ppm falls well below the 100 ppm that Plaintiffs' cited source considers "trace." *See* SAC ¶ 109; RJN, Ex. F at 17095.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1    In an odd twist, when Plaintiffs do address authorities cited as meaningful in the Motion,

2    they often attempt to distinguish them in ways that serve to reinforce these conclusions. For

3    example, Plaintiffs contend that *Dalewitz v. P&G Co.,* No. 7:22-cv-07323, 2023 WL 6215329

4    (S.D.N.Y. Sept. 22, 2023), resulted in dismissal because the plaintiff simply failed to "alleg[e] []

5    the specific PFAS present and their particular health risks," rather than because TOF analysis fails

6    as an appropriate proxy. Opp. at 8 n.3. But the SAC suffers from the same flaw. As in *Dalewitz*,

7    the SAC in this case suffers from several unsupported inferences, each of which warrants dismissal:

8    "(1) the Product *likely* contains PFAS, (2) the Product *likely* contains specific PFAS, and (3) these

9    specific PFAS are 'coming under scrutiny' and *likely* cause adverse health outcomes." 2023 WL

10    6215329 at *3 (emphasis in original). "Added together, these inferences . . . fail to nudge the claims

11    across the line from conceivable to plausible." *Id*.

12    Plaintiffs' attempt to distinguish *Andrews*, 2019 WL 6520045, fares no better. The

13    Opposition contends *Andrews* is inapplicable because the plaintiff relied on testing reported in a

14    "published scientific study," whereas Plaintiffs here "performed their own testing." Opp. at 7 n.2

15    (citing 2019 WL 6520045, at *1). It is hard to see how the *absence* of peer review could elevate the

16    significance of Plaintiffs' test results. Indeed, the study authors in *Andrews* were constrained to

17    disclose its limitations precisely as a result of peer review. Regardless, the testing methodology is

18    effectively the same and therefore suffers from the same limits. *See Andrews*, 2019 WL 6520045,

19    at *3 (noting that although "the PFAS Study 'hypothesized' that Defendant's [product] might be 'a

20    potential exposure source for PFAS,'" it merely "screen[ed] Defendant's [product] for fluorine,

21    which indicates that PFASs might be present," and "never tested for PFASs").

22    Finally, try as Plaintiffs might, *Krakauer*, 2024 WL 1494489, is on all fours with this case.

23    Plaintiffs assert that *Krakauer* is inapplicable because the challenged marketing statements

24    "specifically disclosed that the manufacturer used short-chain PFAS treatments on its products, and

25    TOF testing could not be extrapolated to confirm the presence of additional PFAS beyond that

26    which the defendant had already disclosed to purchasers." Opp. at 7:12-15. But this disclosure was

27    not central to the court's reasoning. *See Krakauer*, 2024 WL 1494489, at *2. Instead, the court held

28    that, notwithstanding this disclosure, just like the testing by Plaintiffs here, the *Krakauer* plaintiff's

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS - 3:23-CV-00765-AMO

TOF testing withered under scrutiny because it did not plausibly allege "that his jacket contains PFAS and is therefore dangerous to . . . his health" or "that his raincoat contains PFAS let alone . . . at a level sufficient to cause an injury." *Id*. at *5-8. The court also found plaintiff's allegations lacked plausibility because after conducting the TOF test, he failed to "conduct any further testing on the jackets to determine if they ***in fact*** contained PFAS, let alone long chain PFAS or dangerous short chain PFAS." *Id*. (emphasis added). Here, Plaintiffs similarly did not conduct targeted PFAS testing, despite the admonition in one of their cited sources. *See* RJN, Ex. G at 3 ("targeted PFAS" testing is the "necessary confirmation" that TOF measured "comes from [PFAS]").

No matter how hard Plaintiffs try to distinguish or marginalize *Dalewitz*, *Andrews*, or *Krakauer*, these cases each hold that TOF test results do not plausibly demonstrate the presence of PFAS, let alone of a type or in an amount plausibly linked to human harm.

**B.     Plaintiffs Fail to Plead Article III Standing**

The basic premise of Plaintiffs' SAC is that ***if*** P&G's Product contains harmful PFAS, its failure to disclose that fact deprived them the benefit of their bargain in purchasing the Tampons. *See* SAC ¶¶ 161, 168, & 175. As noted above, this theory fails because Plaintiffs do not allege facts that plausibly demonstrate the Product contains any PFAS, let alone a type and at a level even suspected of causing harm, particularly in light of their contradictory sources. Separate from the implausibility of Plaintiffs' pleading, without alleging an actual, concrete and particularized risk of harm, Plaintiffs cannot hope to show they received anything other than that for which they bargained in exchange for the purchase price. Put differently, an alleged overpayment for a product constitutes a "quintessential injury-in-fact" only if it is accompanied by factual allegations showing the product creates an appreciable risk of harm. *See* Opp. at 8:20-23 (citing *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 851 (N.D. Cal. 2018) (economic injury pleaded when dog food allegedly containing "***higher levels*** of arsenic and lead"—"known dangerous toxins"—was marketed as "natural, safe, and pure") (emphasis added)). The SAC fails to clear that hurdle because it merely alleges a hypothetical risk of harm from the speculative PFAS in the Product.

Plaintiffs do not meaningfully respond to this observation. Instead, they cite cases that involve plaintiffs who—unlike them—alleged either physical harm or the specific presence and

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

***quantity*** of a compound alleged to be dangerous. *Kanan*, 2021 WL 4464200, at *1 (specific PFAS analyte testing "found . . . ***short-chain*** PFAS . . . at ***material and above trace amounts***") (quotation omitted) (emphasis added); *In re Plum Baby Food Litig*., No. 4:21-CV-913-YGR, 2022 WL 16640802, at *1 (N.D. Cal. Sept. 3, 2021) *reconsideration denied*, No. 4:21-CV-00913-YGR, 2023 WL 3493319 (N.D. Cal. May 3, 2023) (allowing claims to proceed where plaintiffs alleged "alarming levels of arsenic"); *Dawood v. Gamer Advantage LLC*, No. 2:22-CV-00562-WBS-KJN, 2022 WL 3108846, at *1 (E.D. Cal. Aug. 4, 2022) (allowing claims to proceed where complaint cited to a study showing that defendant's eyeglass treatment "exposes consumers to PFAS at ***levels higher than the Environmental Protection Agency health advisory limit*** for safe consumption") (emphasis added). In contrast, Plaintiffs allege that the presence of *any* level of TOF somehow indicates harmful levels of a dangerous PFAS compound—even in amounts their own sources consider to be "trace concentrations." *See* RJN, Ex. F at 17095. Contradicted by the very sources they cite, (*see, e.g.*, *id*. Ex. G at 3), these allegations do not support an Article III injury-in-fact.

Plaintiffs fail to meaningfully contest case law that dictates dismissal in these circumstances. In *Bowen v. Energizer Holdings, Inc*., the court held that plaintiff failed to allege an economic injury-in-fact because defendant's sunscreen allegedly contained a chemical within the safe limit established by FDA guidelines. No. CV 21-4356-MWF (AGRx), 2023 WL 1786731, at *9 (C.D. Cal. Jan. 5, 2023). Plaintiffs characterize *Bowen* as "an outlier case," Opp. at 10:13, but ignore the substantial body of law reaching the same result. *See, e.g., Doss v. Gen. Mills, Inc*., No. 18-61924-CIV, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019) *aff'd*, 816 F.App'x 312 (11th Cir. 2020) (plaintiff lacked standing where she alleged that cereal she purchased "contained or *could contain* glyphosate"); *Coffelt v. Kroger Co*., EDCV 16-1471 JGB (KKx), 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018) ("Plaintiff offers no authority for the proposition that he has standing or injury simply because a product was recalled and *may* have been contaminated") (emphasis added).

Plaintiffs also attempt to distinguish *Bowen*, *Herrington v. Johnson & Johnson Consumer Cos., Inc*., No. 09-cv-1597, 2010 WL 3448531 (N.D. Cal. Sep. 1, 2010), and *Wilson v. ColourPop Cosmetics, LLC*, No. 22-CV-05198, 2023 WL 6787986 (N.D. Cal. Sept. 7, 2023), *appeal dismissed*,

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

No. 23-2627, 2023 WL 9112928 (9th Cir. Dec. 20, 2023) on the ground that the plaintiffs in those cases did not allege affirmative misrepresentations. *See* Opp. at 9 n.4 & 10:12-25. Their argument is unpersuasive. First, *Herrington* did involve allegations of affirmative misrepresentations. 2010 WL 3448531, at *6 ("The gravamen of [plaintiffs'] claims is that Defendants made affirmative misrepresentations . . . about their children's bath products."). So too did *Wilson*, 2023 WL 6787986, at *1 ("Plaintiff argues that Defendant misrepresents the purpose of the product"). Second, Plaintiffs fail to articulate why the Article III standing inquiry should be different because they are alleging affirmative misrepresentations. For these reasons, Plaintiffs lack standing and the SAC should be dismissed in its entirety.

**C.    The Challenged Statements Cannot Mislead a Reasonable Consumer**

Even assuming Plaintiffs plausibly alleged the presence of PFAS—they do not—they have still failed to plead that the "Pure Cotton" and "Contains 100% Organic Cotton Core" statements would mislead a reasonable consumer. Once again, Plaintiffs avoid the full context of the packaging, fixating on "pure cotton" and "100% organic" in isolation. But even the front label alone never represents that the entire product is "100% organic," and instead, conspicuously emphasizes the Product "CONTAINS 100% ORGANIC COTTON CORE." SAC ¶ 5. This phrase unambiguously conveys that the Product "contains" a "100% organic cotton core," denoting that other parts of the Product exist and may contain different ingredients. Other cases in this district have rejected similarly narrow attempts to construe packaging statements in order to fabricate a claim. For example, in *Klammer v. Mondelez Int'l, Inc.*, No. 22-CV-02046-JSW, 2023 WL 105095, at *2 (N.D. Cal. Jan. 4, 2023), a plaintiff alleged that the term "high protein" on a package of chips was misleading because the product did not meet the FDA labeling requirements. The court disagreed, observing that it "must consider the packaging 'as a whole,'" which revealed that "'high protein' never appears in isolation" but instead was "always used in connection with lentils or lentil flour," representing only that "*those* ingredients were high in protein." *Id*. at *3 (emphasis added). Here too, "100% Organic" never appears in isolation on the Product, so no reasonable consumer would believe that the entire product is 100% organic based on that isolated phrase.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

The phrase "Pure Cotton" likewise cannot be ripped from its full context to ground Plaintiffs' claims. Indeed, Plaintiffs concede that this phrase is proceeded by an asterisk that directs consumers to read the "contains 100% organic cotton core" statement. Opp. at 17:3-10. Plaintiffs admit that "as a practical matter, because the front label contains two asterisks . . . it is plausible that a reasonable consumer would understand those asterisks to be in relation to each other." *Id.* at 17:5-8. Thus, in light of such context, no reasonable consumer would understand the entire Product to be "Pure Cotton." *See Klammer*, 2023 WL 105095, at *3. Even if any confusion remained as to whether the Product was entirely composed of cotton, it is dispelled by the back label, which identifies non-organic cotton portions of the Product, such as a plastic applicator. SAC ¶ 6; *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021) ("[R]easonable consumers would necessarily require more information before they could reasonably conclude Trader Joe's label promised a honey that was 100% derived from a single, floral source.").

Plaintiffs also fail to rebut that the package's "Best of Science and Nature" statement constitutes mere inactionable puffery. "[A]dvertising which merely states in general terms that one product is superior is not actionable." *Cook, Perkiss & Liehe, Inc. v. N. Cali. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). It does not purport to describe any "specific or absolute characteristics of a product." *Id.*; *see also Klammer*, 2023 WL 105095, at *4 (statement is inactionable puffery where it is merely "a subjective claim that Defendant's chips are superior to other chip brands"). Plaintiffs assert that the statement has "real meaning and speaks directly to the quality of the Products" but do not identify any "specific or absolute characteristics" of the Products to which the statement refers. Opp. at 20:5-10, 20:21-22. They also contend that the statement "is generally understood as meaning natural and free of human-made chemicals like PFAS." *Id.*. The court should not accept these conclusory and unsupported allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (threadbare and conclusory assertions do not state a plausible claim).

Accordingly, no reasonable consumer would construe "Pure Cotton," "contains 100% Organic Cotton Core," or "Best of Science and Nature" to represent the absence of PFAS, so, even if Plaintiffs adequately pled the Product contained harmful PFAS, their claims nonetheless fail.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS - 3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1

**D.**    <u>**Plaintiffs Fail To Allege An Omission Claim With Particularity**</u>

2          Plaintiffs' omission claims under the CLRA, FAL, and UCL should be dismissed because

3    they fail to allege any basis to require disclosure. Plaintiffs allege no facts to support their

4    foundational premise that the Product contains harmful PFAS, nor do they plausibly allege P&G's

5    knowledge. *See* Mot. at 22:13–23:8. As with every claim in the SAC, Plaintiffs' TOF test fails to

6    demonstrate the Product contains PFAS—let alone any type and quantity linked to human harm.

7    *See id*. at 8:20–13:23. Accordingly, Plaintiffs have failed to allege the "material fact" required for

8    a duty to disclose to arise. *See id*. at 22:13–23:8; *Gutierrez v. Johnson & Johnson Consumer, Inc*.,

9    No. 19-CV-1345 DMS (AGS), 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020) (exclusive

10   knowledge lacking because "the presence of a carcinogen may not be a 'material' fact subject to

11   disclosure if it exists in levels accepted under the law").

12         Even assuming Plaintiffs could clear that hurdle (they cannot), their attempt to establish

13   P&G's exclusive knowledge by pointing solely to its role as the manufacturer of the Product fails.

14   *See* Opp. at 21:14-15. Putting aside that this is not alleged in the SAC, this conclusory allegation is

15   devoid of any facts to support such an inference. *See, e.g*., *Hamman v. Cava Grp., Inc*., No. 22-

16   CV-593-MMA (MSB), 2023 WL 3450654, at *9 (S.D. Cal. Feb. 8, 2023) (bare allegation that

17   "[d]efendant has exclusive knowledge of the Product[s'] composition, which was not known to

18   [p]laintiffs or Class Members" fails to "plausibly support the allegation that Defendant had

19   exclusive knowledge that the Products contained PFAS"); *Wilson v. Hewlett–Packard Co*., 668

20   F.3d 1136, 1146–47 (9th Cir. 2012) (rejecting as conclusory allegation that defendants were in a

21   "superior position to know the truth about the [product]"). Further, this argument would replace the

22   applicable "actual knowledge" standard with strict liability for any manufacturer overseeing its own

23   manufacturing—an untenable and unsupported position.

24   **E.**    <u>**Plaintiffs Fail to Plead Facts Alleging Reliance With Particularity**</u>

25         The Opposition does not dispute that Rule 9(b) governs allegations of reliance, yet it does

26   not even attempt to describe the "time" or "place" Plaintiffs purportedly were exposed to or relied

27   upon the "Pure or Organic Representations", nor which specific of the multiple such statements

28   they relied upon. *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2009) (dismissing

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS - 3:23-CV-00765-AMO

misrepresentation allegations under Rule 9(b) because plaintiff did not allege "when he was exposed to them"); *Vaccarino v. Midland Life Ins. Co.*, No. CV 11-05858 CAS (MANx), 2011 WL 5593883, at *6 (C.D. Cal. Nov. 14, 2011). Instead, the Opposition simply repeats the conclusory allegation in the SAC that "Plaintiffs relied" on the various representations, without any specifics. *See* Opp. at 14:24-27 ("Plaintiffs allege that they relied on the representations on the Tampon Products' packaging"). This fails to meet Rule 9(b)'s heightened pleading standard. *See Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2020 WL 3544988, at *7 (N.D. Cal. June 30, 2020) (allegation that plaintiff "saw and believed the in-store signage representing that all of the foods sold there were '100% clean' lacks specificity required under Rule 9(b)").

F. **Plaintiffs' "Unlawful" UCL Claim Fails for Additional Reasons**

The Opposition similarly fails to save Plaintiffs' "unlawful" UCL claim from dismissal. Plaintiffs' allegation that the Product contains harmful PFAS is speculative and not supported by any well-pled facts. *See supra* Section II.A. As such, Plaintiffs' theory of deception fails and the "unlawful" UCL claim cannot be based on violations of the CLRA or FAL.

Nor can Plaintiffs anchor their "unlawful" UCL claim in alleged violations of the Federal Food, Drug, and Cosmetic Act, 21 USC §§ 301, *et seq.* ("FFDCA"), or its California analog, the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100, *et seq.* ("CA FDCA"). *See* Opp. at 22:18-23:11. Plaintiffs' theory of adulteration depends on plausibly alleging that the Product contains a "poisonous or deleterious substance which may render the contents injurious to health[,]" SAC ¶ 120, which, as shown above, they fail to do. *See Herrington*, 2010 WL 3448531, at *9 (dismissing FFDCA and CA FDCA claims where "Plaintiffs have not alleged that the levels of [chemicals] . . . in Defendants' products create a cognizable risk of injury to their children"). Plaintiffs' theory of misbranding also falls short because Plaintiffs cannot plausibly allege that the Product packaging would be understood by reasonable consumers to mean that the Tampons "are free from potentially harmful ingredients such as PFAS." *See* Opp. at 23:7-11; SAC ¶ 126. Even assuming the Product contains PFAS—which Plaintiffs do not plausibly allege— nothing on the Product label states or suggests that the Tampons are completely free of any trace amount of environmental contamination, and courts faced with similar theories have rejected them

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

as unreasonable. *See, e.g.*, *Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at \*4 (N.D. Cal. Oct. 6, 2020) ("Plaintiff's theory of deception—reasonable consumers interpret the word natural to mean a food product that is completely free of any trace pesticides—has been rejected by several courts."); *see also* RJN, Ex. F at 17091, 17095 (TOF PPM under 100 are considered "trace" amounts). Because Plaintiffs fail to draw any "cogent nexus" between the packaging claims they challenge and their "belief that the Product [they] purchased was PFAS-free[,]" *Solis v. Coty, Inc.*, No. 22-CV-0400-BAS-NLS, 2023 WL 2394640, at \*7 (S.D. Cal. Mar. 7, 2023), they have not plausibly alleged that the Product packaging is misbranded by including "false or misleading" content, as required to maintain an "unlawful" UCL claim.

### G.    The Unjust Enrichment Claim Fails

Plaintiffs' unjust enrichment claim fails because, *inter alia*, the SAC fails to plausibly allege: (1) an injury-in-fact; (2) that the Product contains harmful PFAS; and (3) that the challenged statements are materially misleading. *See supra* Sections II.A-C; *Amin v. Subway Restaurants, Inc.*, No. 21-CV-00498-JST, 2021 WL 11680840, at \*4 (N.D. Cal. Oct. 7, 2021) (dismissing "unjust enrichment [claim that] fails to identify any independent theory of unjust enrichment that does not rise or fall with the[] fraud claims"). Instead of addressing these failures, Plaintiffs manufacture a strawman through *Astiana v. Hain Celestial Grp., Inc.*, which clarified that California law recognizes claims for quasi-contract seeking restitution. 783 F.3d 753, 762 (9th Cir. 2015). But the Motion never claimed otherwise. California's recognition of such a cause of action does not transform Plaintiffs' deficient allegations into a plausible claim. Further, while some courts have permitted a plaintiff to seek equitable restitution in the alternative to legal remedies, a "[p]laintiff still must plead they lack an adequate remedy at law." *Freund v. HP, Inc.*, No. 22-CV-03794-BLF, 2023 WL 187506, at \*6 (N.D. Cal. Jan. 13, 2023). Plaintiffs fail to do so.[4] Mot. at 24; SAC ¶ 257.

---

[4] Plaintiffs' attempt to distinguish *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) based on its procedural posture fails. *See* Opp. at 24:22-25; *Blain v. Liberty Mut. Fire Ins. Co.*, No. 22-CV-0970-AJB-DEB, 2023 WL 2436003, at \*12 (S.D. Cal. Mar. 9, 2023 ("Regardless of the stage of the litigation, this District has consistently ruled that the plaintiff must state they lack an adequate remedy at law when raising equitable claims since *Sonner* was decided in 2020").

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**H.**     <u>**Plaintiffs Cannot Represent Out-of-State Class Members**</u>

It is immaterial whether Plaintiffs' ability to represent out-of-state putative class members possessing non-California consumer fraud claims is a question of standing as opposed to "adequacy under Rule 23." *See* Opp. at 11:12. That is because a district court possesses the discretion to decide the issue at the pleading stage under *either* principle. *See Sultanis v. Champion Petfoods USA Inc.*, No. 21-CV-00167-EMC, 2021 WL 3373934, at *5 (N.D. Cal. Aug. 3, 2021).

The opposition relies heavily on *Lopez v. Zarbee's Inc.* (Opp. at 12:15-22), but the court in *Lopez* expressly ***adopted*** the logic of *Sultanis*. No. 22-cv-04465-CRB, 2023 WL 210878, at *8 (N.D. Cal. Jan. 17, 2023) (the "reasoning [in *Sultanis*] is persuasive"). The court in *Lopez* ultimately declined to exercise its discretion to dismiss claims brought under the laws of states where the plaintiff did not reside or allege injury because the defendant did not "make a showing about other states' laws". *Id.* at *9. But here, material differences in the ten states' consumer fraud statutes at issue in Count I of the SAC weigh towards dismissal of the claims of all absent class members who purchased the product outside of California. *See* Mot. at 25:17-19 (citing *Sultanis*, 2021 WL 3373934, at *7-8). *Sultanis* analyzed the differences in some of the same states' laws pleaded under Count I of the SAC, including:

> <u>Intent</u>. Illinois's, Michigan's, and Minnesota's consumer protection statutes appear to require some form of intent to deceive on the part of the defendant. *See Griffin v. Univ. Cas. Co.*, 654 N.E.2d 694, 700–01 (Ill. Ct. App. 1995); *In re OnStar Contract Litig.*, 278 F.R.D. 352, 376 (E.D. Mich. 2011); Minn. Stat. §§ 325F.67, 325F.69(1).

> <u>Reliance</u>. Michigan's consumer protection statute appears to require an individualized showing of reliance. *See In re OnStar Contract Litig.*, 278 F.R.D. at 376

> <u>Causation</u>. Illinois's consumer protection statute appears to require an individualized showing of causation. . . . *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002)[.]

*Id*. at *7 (dismissing multistate claims due to "substantial variations" in the states' laws). Neither the SAC nor the Opposition grapples with these differences. As such, the Court should dismiss the Nationwide (Count V) and Multistate (Count I) claims at the pleading stage.

**III.**     <u>**CONCLUSION**</u>

For the foregoing reasons, this Court should dismiss Plaintiffs' SAC. Having already had the chance to amend twice, this dismissal should be with prejudice.

REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS - 3:23-CV-00765-AMO

1

2     Dated: May 2, 2024                              Respectfully submitted,

3                                                     *s/ Adam R. Fox*

4                                                     Adam R. Fox
                                                      SQUIRE PATTON BOGGS (US) LLP
5                                                     555 South Flower St, Suite 3100
                                                      Los Angeles, CA 90071
6                                                     Telephone: (213) 624-2500
                                                      adam.fox@squirepb.com
7
                                                      Scott A. Kane (*pro hac vice*)
8                                                     SQUIRE PATTON BOGGS (US) LLP
                                                      201 E. Fourth St., Suite 1900
9                                                     Cincinnati, OH 45202
                                                      Telephone: (513) 361-1200
10                                                    scott.kane@squirepb.com

11                                                    *Attorneys for Defendant*
                                                      *The Procter & Gamble Company*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT'S
                                                                 MOTION TO DISMISS - 3:23-CV-00765-AMO