Squire Patton Boggs (US) LLP
Adam R. Fox (State Bar # 220584)
adam.fox@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone:     +1 213 624 2500
Facsimile:     +1 213 623 4581

SQUIRE PATTON BOGGS (US) LLP
Scott A. Kane (Admitted Pro Hac Vice)
scott.kane@squirepb.com
201 E. Fourth St., Suite 1900
Cincinnati, OH 45202
Telephone: (513) 361-1200
Facsimile: (513) 361-1201

*Counsel The Procter & Gamble Company*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

BRITTANY BOUNTHON, ET AL.,

               Plaintiff,

     v.

THE PROCTER & GAMBLE
COMPANY,

             Defendant.

Case No. 3:23-cv-00765-AMO

**DEFENDANT THE PROCTER & GAMBLE COMPANY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Judge: The Honorable Araceli Martinez-Olguín

Date:   February 6, 2025
Time:  2:00 p.m.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...........................................................................................iii

NOTICE OF MOTION ............................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ............................................ 3

    A.    The Court Dismissed Plaintiffs' Prior Complaints as Implausible. ...................... 3

    B.    The Plaintiffs' Current Allegations ........................................................... 5

II.    GOVERNING LEGAL STANDARDS ............................................................. 7

III.    ARGUMENT ............................................................................................. 8

    A.    Plaintiffs Fail to Allege Facts Plausibly Alleging the Tampons Contain a
        Harmful Chemical or Contaminant. ........................................................ 8

        1.    Plaintiffs Fail to Plausibly Allege Organic Fluorine is a Chemical or
                Contaminant or Linked to Negative Health Consequences. ...................... 9

        2.    Trace Levels of Organic Fluorine in the Tampons Cannot Support
                an Economic Injury. ............................................................................. 10

    B.    Plaintiffs Lack Article III Standing ......................................................... 13

    C.    The Challenged Statements Would Not Mislead a Reasonable Consumer ......... 15

        1.    The "Tampax Pure Cotton" and "100% ORGANIC COTTON
                CORE" Statements Cannot Reasonably be Construed as Statements
                About the Absence of Total Organic Fluorine. ....................................... 15

        2.    The "Best of Science and Nature" Statement is Non-Actionable
                Puffery. ............................................................................................ 18

    D.    Plaintiffs Have Not Sufficiently Alleged Reliance .................................... 19

    E.    Plaintiffs' Unlawful Claim Also Fails Because Plaintiffs Fail to Allege
        FFDCA or CA FDCA Violations............................................................ 20

    F.    Plaintiffs Fail to State an Omission Claim Because They Fail to Allege that
        P&G Had a Duty to Disclose the Presence of Trace Amounts of TOF ............... 21

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

G.      Plaintiffs' Unjust Enrichment Claim Fails for the Same Reasons ........................ 22

H.      Plaintiffs Cannot Represent Out-of-State Class Members Because There
        are Substantial Variations in State Laws.................................................................. 23

IV.      CONCLUSION ............................................................................................................... 24

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Adams v. United of Omaha Life Ins. Co.*,
    2013 WL 12113225 (C.D. Cal. Jan. 10, 2013) ........................................................................ 11

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    744 F.3d 595 (9th Cir. 2014) .................................................................................................. 11

*AK Futures LLC v. TBH Supply LLC*,
    2024 WL 2984023 (C.D. Cal. Jan. 19, 2024) ........................................................................ 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 7, 9, 11

*Axon v. Florida's Nat. Growers, Inc.*,
    813 F. App'x 701 (2d Cir. 2020) ............................................................................................. 17

*Azadpour v. Sun Microsys., Inc.*,
    2007 WL 2141079 (N.D. Cal. July 23, 2007) ........................................................................ 11

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) .................................................................................................... 7

*Beshwate v. BMW of N. Am., LLC*,
    2017 WL 6344451 (E.D. Cal. Dec. 12, 2017) ........................................................................ 19

*Bobo v. Optimum Nutrition, Inc.*,
    2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ...................................................................... 16

*Bodle v. Johnson & Johnson Consumer Inc.*,
    2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) ............................................................. 4, 12, 13

*In re Boon Glob. Ltd.*,
    923 F.3d 643 (9th Cir. 2019) .................................................................................................. 14

*Bounthon v. Procter & Gamble Co.*,
    2024 WL 4495501 (N.D. Cal. Oct. 15, 2024) .................................................................. *passim*

*Brown v. Madison Reed, Inc.*,
    2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) ................................................................. 19, 20

*Castillo v. Prime Hydration LLC*,
    2024 WL 4133815 (N.D. Cal. Sept. 9, 2024) ........................................................................ 16

*Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ............................................................................................................ 20

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
COMPLAINT 3:23-CV-00765-AMO

*Chong v. Nestle Water N. Am., Inc.*,
   2021 WL 4938128 (9th Cir. Oct. 22, 2021)................................................................ 22

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...................................................................................................... 13

*Cole v. Sunnyvale*,
   2010 WL 532428 (N.D. Cal. Feb.9, 2010).................................................................. 11

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990)................................................................................. 18, 19

*Dalewitz v. Procter & Gamble Co.*,
   2023 WL 6215329 (S.D.N.Y. Sept. 22, 2023) ......................................................... 9, 15

*Fasugbe v. Willms*,
   2011 WL 2119128 (E.D. Cal. May 26, 2011)............................................................. 11

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995).......................................................................................... 15

*In re General Mills Glyphosate Litig.*,
   2017 WL 2983877 (D. Minn. July 12, 2017).............................................................. 17

*Hackett v. Feeney*,
   2011 WL 4007531 (D. Nev. Sept. 8, 2011) ............................................................... 19

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................ 21, 22

*Harris v. McDonald's Corp.*,
   2021 WL 2172833 (N.D. Cal. Mar. 24, 2021) ............................................................ 15

*Hartman v. Gilead Scis., Inc.*,
   536 F.3d 1049 (9th Cir. 2008)........................................................................................ 7

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
   2020 WL 5910071 (N.D. Cal. Oct. 6, 2020)............................................................... 17

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
   2024 WL 1643696 (N.D. Cal. Apr. 16, 2024) .................................................. 10, 12, 21, 22

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
   No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ....................................... 21

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018)........................................................................................ 22

*Huertas v. Bayer*,
   2022 WL 3572818 (D.N.J. 2022)................................................................................ 12

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

*Jou v. Kimberly-Clark Corp.*,
　　2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ....................................................... 16

*Kearns v. Ford Motor Co.*,
　　567 F.3d 1120 (9th Cir. 2009) ............................................................... 8, 19, 21

*Kim v. Bluetriton Brands, Inc.*,
　　2024 WL 243343 (9th Cir. Jan. 23, 2024) ............................................................ 22

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
　　511 U.S. 375 (1994) ............................................................................... 13

*Lowe v. Edgewell Pers. Care Co.*,
　　711 F. Supp. 3d 1097 (N.D. Cal. 2024) ................................................................ 2

*Lujan v. Defenders of Wildlife*,
　　504 U.S. 555 (1992) ........................................................................... 8, 13

*Marder v. Lopez*,
　　450 F.3d 445 (9th Cir. 2006) ......................................................................... 7

*Michael Bros. v. Hewlett-Packard Co.*,
　　2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ........................................................ 19

*Moore v. Trader Joe's Co.*,
　　4 F.4th 874 (9th Cir. 2021) ........................................................................ 18

*Naimi v. Starbucks Corp.*,
　　2018 WL 11255596 (C.D. Cal. Feb. 28, 2018) ...................................................... 15

*Palmer v. Apple, Inc.*,
　　2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ........................................................ 19

*Panelli v. Target Corp.*,
　　2024 WL 4596412 (S.D. Cal. Oct. 28, 2024) ........................................................ 18

*Papasan v. Allain*,
　　478 U.S. 265 (1986) ................................................................................. 7

*Parks v. Ainsworth Pet Nutrition, LLC*,
　　377 F. Supp. 3d 241 (S.D.N.Y. 2019) ................................................................ 17

*Pels v. Keurig Dr. Pepper, Inc.*,
　　2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ...................................................... 14, 15

*Phan v. Sargento Foods, Inc.*,
　　2021 WL 2224260 (N.D. Cal. June 2, 2021) ......................................................... 23

*Reddy v. Litton Indus., Inc.*,
　　912 F.2d 291 (9th Cir. 1990) ....................................................................... 11

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

*Robie v. Trader Joe's Co.*,
    2021 WL 2548960 ............................................................................................ 12

*Shaker v. Nature's Path Foods, Inc*.,
    2013 WL 6729802 (C.D. Cal. Dec. 16, 2013) ................................................ 19

*Simon v. E. Kentucky Welfare Rights Org*.,
    426 U.S. 26 (1976) ......................................................................................... 14

*Solis v. Coty, Inc.*,
    2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) ................................................. 16

*Sonner v. Premier Nutrition Corp*.,
    971 F.3d 834 (9th Cir. 2020) ......................................................................... 22

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ....................................................................... 19

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................. 8, 13

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ........................................................................... 7

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ........................................................ 11

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) .................................................................... 7, 10

*Steiner v. Vi-Jon, Inc.*,
    2024 WL 1181002 (N.D. Cal. Mar. 18, 2024) .............................................. 16

*Sultanis v. Champion Petfoods USA Inc.*,
    2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) ........................................... 23, 24

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................................... 8

*Tabler v. Panera LLC*,
    2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) ............................................... 20

*Tabler v. Panera LLC*,
    2020 WL 3544988 (N.D. Cal. June 30, 2020) ................................................. 8

*Werbel v. Pepsico, Inc.*,
    2010 WL 2673860 (N.D. Cal. July 2, 2010) ................................................. 15

*Whitaker v. Saleem*,
    2013 WL 1149789 (N.D. Cal. Mar. 18, 2013) ........................................... 3, 24

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

*Wilson v. ColourPop Cosms.*,
   LLC, No. 22-CV-05198-TLT, 2023 WL 6787986 (N.D. Cal. Sept. 7, 2023) ...................... 12

*Younesi v. Sadoughi*,
   2020 WL 2562821 (C.D. Cal. Apr. 22, 2020) ....................................................... 11

*Young v. Cree, Inc.*,
   2021 WL 4749384 (N.D. Cal. Oct. 12, 2021) ....................................................... 20

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................................. 19

*Zeller v. Optavia, LLC*,
   2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) .................................................... 22

**Statutes**

California Health and Safety Code § 108945 ........................................................... 4

Federal Food, Drug, and Cosmetic Act, 21 USC §§ 301, *et seq*. ................................... 21

Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100,
   *et seq*. ........................................................................................... 21

**Other Authorities**

ENCYCLOPAEDIA BRITANNICA ONLINE https://www.britannica.com/topic/cotton-
   fibre-and-plant ................................................................................... 18

Fed. R. of Civ. P. 9(b) ............................................................................. 1, 8, 19, 20

Fed. R. of Civ. P. 12(b)(1) ............................................................................ 1

Fed. R. of Civ. P. 12(b)(6) ............................................................................ 1

THE GUARDIAN, "Tampon wars: the battle to overthrow the Tampax empire"
   https://www.theguardian.com/society/2020/feb/11/tampon-wars-the-battle-to-
   overthrow-the-tampax-empire) ................................................................ 14

Fed. R. of Civ. P. 23 .............................................................................. 23, 24

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

## NOTICE OF MOTION

On February 6, 2025, at 2:00 p.m., before the Honorable Araceli Martínez-Olguín, Defendant The Procter & Gamble Company will move this Court for an order dismissing Plaintiffs' Third Amended Complaint ("TAC"), ECF 80, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). The Motion is based upon this Notice, the Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and appended exhibits, any Reply memorandum, and such other matters as may be presented at or before any hearing the Court conducts.

## STATEMENT OF ISSUES TO BE DECIDED

The Court should resolve whether Plaintiffs plausibly allege: (1) the Tampons contain a harmful chemical or contaminant; (2) trace levels of total organic fluorine give rise to an economic injury; (3) a non-speculative injury-in-fact; (4) material misrepresentations to a reasonable consumer; and (5) reliance. Additionally, the Court should resolve whether Plaintiffs (6) plead their omission claim with particularity; (7) state a claim for unjust enrichment and thus lack an adequate remedy at law; and (8) can represent out-of-state putative class members. P&G respectfully submits Plaintiffs fail in each of these considerations.

## MEMORANDUM OF POINTS AND AUTHORITIES

The TAC is Plaintiffs' fourth attempt to state a plausible and legally cognizable claim. The Court correctly recognized that the prior attempts failed to do so and appropriately dismissed the First and Second Amended Complaints (the "FAC" and "SAC," respectively). Plaintiffs' most recent attempt in the form of the TAC — which relies on the same testing allegations but which *omits* other allegations and content that the Court previously held failed to state a claim — deserves the same result. Stating what should be obvious, a legally defective complaint does not become viable by making it less factual and more conclusory.

Plaintiffs' prior complaints claimed that Tampax Pure Cotton* Tampons (the "Tampons") manufactured by Defendant The Procter & Gamble Company ("P&G") are misleadingly advertised because the Tampons contain "harmful chemicals such as PFAS." *See* Compl. (ECF No. 1) ¶ 76; FAC (ECF No. 39) ¶ 110; SAC (ECF No. 67) ¶ 134. They were based on the flawed theory that

1    because Plaintiffs allegedly detected total organic fluorine ("TOF") in the Tampons, that somehow

2    indicated the presence of allegedly harmful PFAS.  The Court rejected this speculative theory and

3    dismissed Plaintiffs' prior complaints.  *See Lowe v. Edgewell Pers. Care Co.*, 711 F. Supp. 3d 1097,

4    1105 (N.D. Cal. 2024) (applicable to the FAC in this case); *Bounthon v. Procter & Gamble Co.*,

5    2024 WL 4495501, at *9–10 (N.D. Cal. Oct. 15, 2024) (dismissing SAC).

6            Plaintiffs' TAC is based on the same testing this Court has rejected twice already.  *Compare*

7    SAC ¶ 106 (alleging that Plaintiffs tested the Tampons in March 2022 and April 2023); with TAC

8    ¶ 63 (same).  Plaintiffs previously alleged that their testing detected "more than 30 ppm [of TOF]

9    in some of the individual components" of the Tampons, which they concluded indicated the

10   presence of harmful PFAS.  SAC ¶ 109.  The Court dismissed the SAC, holding that this allegation

11   did not plausibly allege anything above a trace level to support a claim.  *See Bounthon,* 2024 WL

12   4495501, at *9.  Based on the same testing, Plaintiffs now allege the pure *conclusion* that the *same*

13   *testing* indicates "above trace amounts."  *See* TAC ¶ 66.  It is axiomatic that conclusions, as opposed

14   to well-pleaded facts, are not entitled to any presumption of truth.  But more importantly, this Court

15   has already rejected this attempted conclusion.  *See Lowe*, 711 F. Supp. 3d at 1104–05 (dismissing

16   Plaintiffs' FAC because the testing allegations "provid[ed] no specificity as to the results reached,"

17   namely the "amount of organic fluorine detected and whether that amount is negligible or

18   significant").  Repeating a conclusion does not make it factual or plausible.

19           Notably, Plaintiffs' TAC does not even allege that the Tampons contain PFAS.  Whereas

20   Plaintiffs' prior theory was that TOF was problematic because it allegedly indicated the presence

21   of dangerous PFAS, Plaintiffs now speculate that TOF is somehow problematic because it might

22   indicate the presence of something else.  This is Plaintiffs' previously-rejected theory made even

23   less specific.  The prior deficient complaint does not become viable by stripping allegations and

24   content from the TAC—especially content the Court found dispositive in dismissing the SAC.

25   Where the implausible conjecture that "TOF might indicate the presence of something bad" (i.e.,

26   allegedly harmful PFAS) fails to state a claim, so too does the watered-down generic conclusion

27   that "TOF might indicate the presence of *something* and that unidentified something might be bad."

28   Plaintiffs do not and cannot allege that TOF is problematic in its own right.  Indeed, Plaintiffs

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

cannot allege anything meaningful about TOF at all because TOF is not even a substance or specific compound. As the sources incorporated in the TAC recognize, TOF is merely an indicator of the presence of something with a carbon-fluorine bond, which encompasses untold thousands of substances—some natural and some manmade. Nothing about TOF poses any inherent danger to human health, which is why Plaintiffs' three prior complaints cast it as an *indicator* of PFAS as the basis of their claims.

Even if the Court accepts Plaintiffs' allegations regarding the presence of organic fluorine, however, Plaintiffs have not plausibly alleged a misleading representation. Plaintiffs claim that they interpreted the packaging representations, including "*CONTAINS 100% ORGANIC COTTON CORE" to mean that the Tampons did not contain "any undisclosed chemicals or contaminants." TAC ¶ 7. But Plaintiffs do not and cannot allege that the Tampons actually contain any chemicals or contaminants, and certainly not any particular type or level to support their attempted claims. Instead, all Plaintiffs can offer is the speculative theory that the presence of TOF must somehow indicate the presence of something harmful, at a harmful level, in order to justify their conclusory price premium claim. The Court has rejected that speculation multiple times already. Effectively swapping out "PFAS" for "generic unspecified substance" in Plaintiffs' reasoning cannot make their deficient claim plausible. Because the packaging contains only true statements that cannot reasonably be interpreted to represent anything regarding the absence of any substance with a carbon-fluorine bond at any level, Plaintiffs' TAC cannot stand. For these and other reasons set forth below, P&G respectfully requests that the Court grant P&G's Motion and dismiss Plaintiffs' TAC with prejudice. *See Whitaker v. Saleem*, 2013 WL 1149789, at *2 (N.D. Cal. Mar. 18, 2013) ("[A]s plaintiff has already been provided a chance to amend and as he failed to cure the deficiencies of the complaint, this case is dismissed with prejudice.").

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Court Dismissed Plaintiffs' Prior Complaints as Implausible.

The SAC presented an implausible theory of harm in a futile attempt to support Plaintiffs' conclusory claims. Plaintiffs alleged, without support, that the presence of "more than 30 ppm" of organic fluorine in the Tampons showed they contain PFAS and, in turn,

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

that these allegations plausibly alleged Plaintiffs paid a premium for the Tampons.  *See* SAC ¶¶ 104–09.  The Court rejected these allegations and dismissed the SAC for two reasons, holding: (1) organic fluorine is not a proxy for the 9,000+ PFAS compounds, let alone any specific PFAS arguably linked to adverse health impacts; and (2) even if it was, Plaintiffs "failed to plausibly allege PFAS are present in the Products at a harmful level."  *See Bounthon*, 2024 WL 4495501, at *8–9.  The Court reached this conclusion, in part, because the SAC discussed a study explaining that the carbon-fluorine atomic bond characterizing PFAS was also found in myriad other innocuous substances, including "about 30 natural products," including plain rainwater.[1]  It also dismissed the SAC because Plaintiff's "independent testing" tested only for TOF, not PFAS and, in any event, detected ***only a trace amount of TOF*** in the Tampons (30 PPM).  *See id.* at *9.  Plaintiffs failed to plausibly allege this level was harmful because, *inter alia*, the SAC cited a study concerning TOF found in carpet and furniture that "defined the presence of less than 100 [PPM] as 'trace concentrations.'"  *See id.* (citing SAC RJN, Exh. F).  The Court also relied on a California statute cited in the SAC—Health and Safety Code Section 108945—that regulated TOF in consumer goods only at levels "at or above 100 [PPM]" to "reinforce[] the implausibility of Plaintiffs' allegations" that exposure to less than this level of TOF exposed users to harm.  *See id.* For these reasons, the Court held that "Plaintiffs failed to plausibly allege . . . the PFAS concentrations they detected through their organic fluorine testing exceed trace amounts or rise to a harmful level" and, in turn, Plaintiffs failed to plausibly allege a price premium injury.  *See id.* (citing *Bodle v. Johnson & Johnson Consumer Inc.*, 2022 WL 18495043, at *2 (N.D. Cal. Feb. 24, 2022) (finding allegations insufficient where the plaintiff alleged that the product at issue contained .13 parts per million of benzene, an amount "significantly less" than the .8 parts per million linked to cancer)).

---

[1] *See Bounthon*, 2024 WL 4495501, at *8 (citing P&G's Request for Judicial Notice in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint, ECF No. 72 ("SAC RJN"), Exh. H (Kentaro Sato, "Naturally Occurring Organic Fluorine Compounds," available at Naturally Occurring Organic Fluorine Compounds : - Focusing on the Elements - Naturally Occurring Organic Fluorine Compounds | TCI AMERICA (last accessed Dec. 6, 2024)).

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

**B.**     <u>**The Plaintiffs' Current Allegations**</u>

While Plaintiffs have finally abandoned their speculative theory that TOF is a proxy for PFAS—let alone one of the few PFAS of over 9,000 arguably linked to human harm—the TAC still fails to correct the dispositive pleading deficiencies the Court identified.  Instead, the TAC merely scrubs nearly all mentions of PFAS and now alleges simply that the presence of TOF—standing alone—is misleading and states a price premium claim under California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"), and the consumer fraud statutes of nine other states.  In other words, the TAC offers nothing more than a sanitized regurgitation of Plaintiffs' prior theory—claims the Court already dismissed *twice* as conclusory and implausible.

Like Plaintiffs' prior pleading, the TAC attempts to challenge certain statements on the Tampons' label: (1) "Tampax pure cotton*"; (2) "The Best of Science and Nature"; (3) "*CONTAINS 100% ORGANIC COTTON CORE"; and (4) "CONTAINS 100% ORGANIC COTTON OUTERWRAP."  TAC ¶ 7.  Notably, on both the front and back of the Tampons packaging, the asterisk after the words "Tampax Pure Cotton*" directs consumers to immediately adjacent additional statements prominently disclosing that the Tampons "*CONTAIN[] 100% ORGANIC COTTON CORE."  *See id.* ¶¶ 5–7; 39–41.[2]  Plaintiffs now contend these statements are misleading not because the Tampons allegedly contain PFAS, but because they contain organic fluorine, which Plaintiffs implausibly describe as an "unnecessary chemical and containment."  *See e.g.*, *id.* ¶¶ 4, 12, 33, 46.  Plaintiffs aver having purchased the Tampons multiple times from various big-box retailers in 2022 and 2023.  *Id.* ¶¶ 97, 104, 111.  They allege having done so with the expectation that the Tampons would be free from "chemicals, pesticides, or other non-organic ingredients and contaminants," like organic fluorine, based on the absence of any mention of organic fluorine on the Tampons' packaging.  *See id.* ¶¶ 100, 107, 114.

---

[2] Although Plaintiffs also cite various statements from P&G's website and social media accounts, *e.g.*, TAC ¶¶ 42–52, they never allege having visited these sources.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Plaintiffs do not explain how they could plausibly form this expectation given the acknowledged ubiquity of organic fluorine observed by the TAC and sources Plaintiffs chose to cite in their TAC.  *Id.* ¶ 10.  As described in one source, TOF is not a "chemical" or "contaminant" at all, but, instead, is a type of atomic bond formed in the myriad substances containing a carbon atom attached to fluorine atom.  *See* Request for Judicial Notice ("<u>TAC RJN</u>"), Exh. B.  As the TAC recognizes, this bond occurs not just in manmade Tampons but is also found in "about 30 natural" (i.e., "organic") substances, including plants, marine sponges, volcanic gases, and even rainwater.[3]  *See id.*  Notably, the TAC does not allege—nor could it—that any substance containing a carbon-fluorine bond is inherently problematic.  TAC, *passim*.

The TAC alleges the Tampons contain TOF based on a "TOF analysis" test Plaintiffs commissioned in March 2022 and April 2023.  TAC ¶¶ 61–63.  This is the same alleged "independent testing" Plaintiffs relied on in their unsuccessful attempt to plausibly allege risk of harm in the SAC. *Compare id.* ¶ 63 ("Plaintiffs first tested two samples of the whole finished Tampon Product in March 2022. Plaintiffs then conducted a second round of testing in April 2023, this time analyzing each individual component of the Tampon Products—the absorbent core, the fabric overwrap, the string, and the applicator."), *with* SAC ¶ 106 (same).  Despite relying on the same test performed at the same time, the TAC omits that the "TOF analysis" yielded "more than 30 PPM" in the Tampons' components—a trace amount according to sources Plaintiff cited in the SAC.  *See Bounthon*, 2024 WL 4495501, at *8–9; SAC ¶ 109.  Instead, Plaintiffs now omit those results, yet contradictorily allege the same testing detected "above trace amounts," despite the Court already holding otherwise.  *See* TAC ¶ 66.  Plaintiffs also removed from the TAC the study cited in the SAC defining TOF levels under 100 ppm as "trace amounts," as well as the California statute supporting the same.  *See generally* TAC; SAC ¶ 98.

Plaintiffs cannot salvage the defects of their prior pleadings or otherwise state a claim by making fewer allegations and ***omitting*** prior allegations—especially when those omitted

---

[3] This source explained that the TOF found in rainwater does not reflect contamination by a manmade or industrial Tampons or compound containing TOF, but instead appears to be natural. *See* TAC RJN, Exh. B ("The concentrations [in rainwater] are suggested to be too high to be explained as being originated from artificial sources.").

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

1    allegations contradict Plaintiffs' new allegations.  Indeed, despite again relying on test results

2    identifying only a trace amount of TOF, Plaintiffs now implausibly argue the challenged statements

3    are nevertheless deceptive because "the presence of organic fluorine in the Tampon Products

4    ***potentially*** exposes consumers to chemicals which are linked to health issues" (TAC ¶¶ 120–21)

5    (emphasis added).  This is Plaintiffs' previously rejected theory with "chemicals" substituted for

6    "PFAS."  Unsurprisingly, Plaintiffs do not and cannot allege physical injury to themselves or

7    anyone else from the detection of TOF.  Nor do they allege the Tampons failed to serve their

8    intended purpose (*i.e.*, as a feminine hygiene Tampons).  Plaintiffs instead simply aver their

9    speculation that the Tampons are "worthless," only to proclaim that they still might have bought

10   the Tampons if they had been offered at a lower price.  *See id.* ¶¶ 84, 102, 109, 116.

11   ## II.    <u>GOVERNING LEGAL STANDARDS</u>

12       "Dismissal [of a complaint] can be based on the lack of a cognizable legal theory or the

13   absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police*

14   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The Court may disregard any "legal conclusion couched

15   as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and "allegations that are

16   merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Hartman v.*

17   *Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A plaintiff's claim lacks

18   plausibility if the "well-pleaded facts do not permit the court to infer more than the mere possibility

19   of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

20       When assessing a complaint's sufficiency, "a plaintiff can . . . plead himself out of a claim

21   by including unnecessary details contrary to his claims."  *Sprewell v. Golden State Warriors*, 266

22   F.3d 979, 988 (9th Cir. 2001).  This rule empowers the Court to review the numerous references

23   Plaintiffs chose to cite and incorporate in their TAC as purported support for their conclusory

24   allegations.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (on a motion to dismiss, the

25   "Court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint

26   refers to the document . . . ").  The Court enjoys broad power to reject allegations that

27   mischaracterize or contradict statements made in the referenced materials.  *See Steckman v. Hart*

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (rejecting "conclusory allegations . . . contradicted by documents referred to in the complaint").

The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) govern claims sounding in fraud under the CLRA, UCL, and FAL. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009). Thus, such claims may survive only if they provide "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). Plaintiffs must likewise plead reliance with particularity. *See, e.g.*, *Tabler v. Panera LLC*, 2020 WL 3544988, at *7 (N.D. Cal. June 30, 2020) (under Rule 9(b), "Plaintiff must plead which specific advertisements she saw, believed, and relied upon").

Plaintiffs also must establish Article III standing to seek relief in this forum. Article III specifically requires that plaintiffs have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To adequately allege an injury in fact, a plaintiff must demonstrate that she suffered "an invasion of a legally protected interest," which is "concrete and particularized," and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations omitted).

## III.    **ARGUMENT**

### A.    **Plaintiffs Fail to Allege Facts Plausibly Alleging the Tampons Contain a Harmful Chemical or Contaminant.**

Each claim in the TAC hinges on Plaintiffs' assertion that the Tampons allegedly contained organic fluorine, which they contend "potentially exposes consumers to chemicals which are linked to the risks of health issues." *See* TAC ¶¶ 120–21. This conclusory theory is identical to Plaintiffs' prior implausible complaints, with "chemicals" substituted for "PFAS," which Plaintiffs alleged were "known to be harmful to humans and the environment." SAC ¶ 218. Here, Plaintiffs do not allege anything about any particular substance, much less any harmful one. The Court dismissed these same allegations as implausible because they failed to allege the Tampons contained a harmful PFAS, let alone at a harmful level given that Plaintiffs' testing detected only "trace"

amounts of organic fluorine.  *See Bounthon*, 2024 WL 4495501, at *9.  The same result follows here.  Because Plaintiffs fail to plausibly allege TOF is a "chemical[] [or] contaminant," *see, e.g.*, TAC ¶ 136, let alone one present in the Tampons in a quantity linked to harm, the Court should dismiss the TAC.

### 1.    Plaintiffs Fail to Plausibly Allege Organic Fluorine is a Chemical or Contaminant or Linked to Negative Health Consequences.

Plaintiffs fail to plausibly allege that organic fluorine, standing alone, is a "chemical" or "contaminant," let alone one linked to harm, and, for this reason, the TAC is entirely conclusory and should be dismissed.  *See* TAC ¶ 46.  Plaintiffs' conclusory theory of injury is that they overpaid for the Tampons because the Tampons were not, *inter alia*, "pure" since they contained organic fluorine, allegedly a "chemical[] and contaminant" (TAC ¶ 116) that potentially exposed Plaintiffs to "risks of health issues," *id*. ¶ 120.  But Plaintiffs *fail to allege any facts* demonstrating organic fluorine itself is harmful—let alone at what level—or even that it is a "chemical[] and contaminant" (it is not).  Plaintiffs' conclusions are no substitute for well-pleaded factual allegations, as the Court has already held in the context of the First and Second Amended Complaints.  Plaintiffs cursorily allege that organic fluorine is present in "PFAS chemicals," and that PFAS (not organic fluorine) have been linked to "health issues," but this allegation fails to state a claim. The Court already rejected this theory as an unsupportable inference.  *See Bounthon*, 2024 WL 4495501, at *8 (citing *Dalewitz v. Procter & Gamble Co*., 2023 WL 6215329, at *3 (S.D.N.Y. Sept. 22, 2023)).  Plaintiffs' reliance on TOF, standing alone, offers an even more speculative and far-fetched theory of injury than alleged in the FAC or SAC.  Plaintiffs essentially ask the Court to make the unwarranted inference that TOF *might* be indicative of some unidentified, unhealthy compound, without actually pleading what that compound might be (or why it is harmful).  *See Iqbal*, 556 U.S. at 678 (courts are "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements").

Further, sources Plaintiffs cite in the TAC contradict the inference that organic fluorine is unnatural, let alone a "chemical[] and contaminant," given that it is present in approximately 30 natural sources, including in rainwater at levels "too high to be explained as originated from

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

artificial sources." *See* TAC RJN, Exh. B.  As reflected above, TOF is indicative of any substance—natural or manmade—that contains a carbon-fluorine bond; it is not a substance itself, much less a "chemical" or "contaminant."  The Court should reject the conclusory, implausible allegations in the TAC that contradict this referenced source.  *See Steckman*, 143 F.3d at 1295–96 (rejecting "conclusory allegations . . . contradicted by documents referred to in the complaint"); *Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) (rejecting CLRA and UCL claims based on allegedly "high" levels of heavy metals because "Plaintiff's own sources indicate that '[e]xposure at a level *1,000 times greater than*[']" Plaintiff's referenced point "*have no observable effect*.") (emphasis in original); TAC RJN, Exh. B (describing natural sources of carbon-fluorine bonds).

### 2. Trace Levels of Organic Fluorine in the Tampons Cannot Support an Economic Injury.

Even if Plaintiffs plausibly alleged that organic fluorine was a chemical or contaminant, let alone a harmful one (they have not), they fail to plausibly allege they detected it at a harmful level. Plaintiffs rely on the same test results that the Court already found implausible—*i.e.*, detecting 30 PPM of TOF in the Tampons, "with higher concentrations in the aggregate."  *See Bounthon*, 2024 WL 4495501, at *9 (citing SAC ¶ 109).  Now, however, Plaintiffs simply omit the results, contending only the same test yielded "above trace amounts."  *See* TAC ¶ 66.  This does not make their claims plausible, as the Court need not accept these conclusory, pared down allegations that contradict those in the SAC.  Nor does switching the theory of harm from PFAS to TOF save Plaintiffs' claims, as courts regularly dismiss economic injury actions in which plaintiffs fail to plausibly allege the presence of ***any*** alleged contaminant at a level plausibly linked to harm—whether TOF, PFAS, or something else.

Plaintiffs cannot run away from the dispositive deficiencies in their prior, dismissed pleading (the SAC) where they specified the same testing yielded only "30 parts per million, with higher concentrations in the aggregate"—an amount far less than the 100 PPM considered to be a trace amount by the sources Plaintiffs relied on in the SAC.  *Bounthon*, 2024 WL 4495501, at *9 (citing SAC ¶ 109).  Plaintiffs still rely on the same exact test conducted at the same time.  *Compare*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SAC ¶ 106, *with* TAC ¶ 63.  While the TAC now also omits the study finding TOF levels under 100 PPM to be trace, *see* SAC RJN, Exh. F, the Court can and should also consider those allegations and sources while assessing the plausibility of the TAC.  *See also* TAC RJN, Exh. A.

Under Ninth Circuit law, an amended complaint "may only allege 'other facts consistent with the challenged pleading.'"  *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) (citation omitted); *see also Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014).  A corollary to this rule is also enforced within the Ninth Circuit: courts may "consider the prior allegations in the original complaint as part of [their] 'context-specific' inquiry . . . to assess whether [an amended] Complaint plausibly suggests an entitlement to relief, as required under *Iqbal*."  *See Fasugbe v. Willms*, 2011 WL 2119128, at *5 (E.D. Cal. May 26, 2011) (quoting *Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010)); *Adams v. United of Omaha Life Ins. Co*., 2013 WL 12113225, at *3 (C.D. Cal. Jan. 10, 2013) (dismissing action as time barred after plaintiff's amended complaint omitted allegations specifying when plaintiff was put on notice of claims); *Azadpour v. Sun Microsys., Inc*., 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'").[4]  Courts exercise their discretion to consider allegations in prior pleadings when a party deletes allegations the court relied on in dismissing a prior pleading.  *See AK Futures LLC v. TBH Supply LLC*, 2024 WL 2984023, at *3 (C.D. Cal. Jan. 19, 2024) (holding counterclaims implausible based on allegations in prior pleading when defendant deleted "prior admissions" that the Court already analyzed in dismissing previous version of a counterclaim).

---

[4] *See also Younesi v. Sadoughi*, 2020 WL 2562821, at *4 n.5 (C.D. Cal. Apr. 22, 2020) (for purposes of a motion to dismiss alleging untimeliness, the allegations of both the original and amended complaints regarding the dates when plaintiff discovered certain facts (including the additional more detailed allegations of the original complaint on this issue), which in turn bore on when the claim accrued, were considered in reaching the Court's finding of untimeliness); *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1145 (N.D. Cal. 2010) (granting motion to strike; "the Court will not accept Schlesinger's allegation that he did not receive a refund given Plaintiffs' past contradictory pleadings").

1       These principles are dispositive and illustrate why Plaintiffs' claims remain implausible.

2   Here, the Court need not (and should not) consider Plaintiffs' contradictory allegation that their

3   testing of the Tampons detected "more than trace" TOF levels because the same test, alleged with

4   far more detail in the SAC, detected *less than 100 PPM*—a trace amount according to the Court's

5   prior order. *See Bounthon*, 2024 WL 4495501, at *9. Put differently, by now alleging the same

6   test yielded "more than trace" TOF, Plaintiffs directly contradict their prior pleading concerning a

7   key allegation that the Court assessed in finding the SAC implausible. *See id.* This contradictory

8   allegation does nothing to cure the deficiencies in the SAC—indeed, it highlights those

9   deficiencies—and is impermissible under controlling case law. As such, the Court should dismiss

10  the TAC as implausible.

11      Courts regularly dismiss economic injury actions if a plaintiff fails to plausibly allege the

12  presence of an alleged contaminant above a threshold amount that could plausibly cause harm. *See,*

13  *e.g.*, *Bodle*, 2022 WL 18495043, at *2 (dismissing consumer fraud claims as implausible because

14  allegations that Plaintiff used sunscreen containing 0.13 ppm of benzene, allegedly a carcinogen,

15  fell below the level that materials cited in complaint linked to health problems); *Robie v. Trader*

16  *Joe's Co.*, 2021 WL 2548960, at *1 & *5 n.1 (N.D. Cal. June 14, 2021) (dismissing false advertising

17  claims because allegations that testing revealed a quantified amount of artificial flavoring in a

18  product labeled "natural" failed to plausibly allege such levels were "material or significant");

19  *Huertas v. Bayer*, 2022 WL 3572818, at *6 (D.N.J. 2022) (allegation that sunscreen contains

20  harmful amounts of benzene is conclusory because it "fails to compare the allowable amount with

21  the amount that actually existed in the Products"); *Wilson v. ColourPop Cosms.*, LLC, No. 22-CV-

22  05198-TLT, 2023 WL 6787986, at *4–5 (N.D. Cal. Sept. 7, 2023) (in the absence of a regulatory

23  determination that products contain harmful ingredients, "Plaintiff's allegation that the Products

24  are unsafe is not a fact, but rather, is conclusory in nature" and "is speculative"); *see also Hayden*,

25  2024 WL 1643696, at *8 (plaintiff failed to allege that specific level of cadmium present in products

26  was unsafe and only alleged, without reference to scientific guidance or other materials, that the

27  levels present were "high").

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1    The same result follows here.  Just as the Court found Plaintiffs previously failed to allege

2    an unsafe level of harmful PFAS (an allegation at the crux of each cause of action), the Court should

3    now find the amended pleading fails to allege more than a trace amount of TOF—a compound

4    Plaintiffs fail to plausibly allege is a "chemical[] and contaminant" at all, let alone one that can

5    cause harm.  *See Bounthon*, 2024 WL 4495501, at *9; TAC RJN Exh. A at 17095.  Absent such

6    allegations, Plaintiffs have failed to plausibly allege an economic injury.  *See, e.g.*, *Bodle*, 2022

7    WL 18495043, at *2.  Plaintiffs fail to plausibly allege the Tampons contain any level of TOF

8    plausibly linked to bodily harm, or that TOF is linked to bodily harm at all, and thus fail to state a

9    claim.

10    **B.    Plaintiffs Lack Article III Standing**

11    Even assuming the trace TOF levels Plaintiffs allegedly detected are actionable (they are

12    not), Plaintiffs fail to allege that the specific Tampons ***they*** purchased in fact contained TOF.  The

13    failure to plead this fact is fatal to Plaintiffs' claims because they have not pleaded a particularized

14    injury and therefore lack standing to pursue their claims.

15    The "burden of establishing" jurisdiction and Article III standing "rests upon the party

16    asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

17    "Injury in fact is a constitutional requirement" and not even Congress can "erase Article III's

18    standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise

19    have standing."  *Spokeo*, 578 U.S. at 339 (citations omitted).  "Particularization is necessary to

20    establish an injury in fact," and for "an injury to be 'particularized,' it 'must affect the plaintiff in

21    a personal and individual way.'"  *Id*. (quoting *Lujan*, 504 U.S. at 561, n.1).  Thus, "mere

22    speculation" that an injury did or might occur "cannot satisfy the requirement that any injury in fact

23    must be fairly traceable to" the alleged wrongdoing of a defendant.  *See Clapper v. Amnesty Int'l*

24    *USA*, 568 U.S. 398, 410–11 (2013).

25    Here, Plaintiffs do not allege that they tested the Tampons they in fact purchased to confirm

26    those Tampons contained TOF.  Nor do they allege that all the Tampons contain TOF—such as via

27    the design of the Tampons or otherwise.  Plaintiffs merely allege they tested three "samples" at two

28

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

1    intervals, which yielded trace levels of TOF.  *See* TAC ¶ 63.  Nothing in the TAC alleges or

2    suggests these samples were representative of the Tampons as a whole.

3        In *Pels v. Keurig Dr. Pepper, Inc*., 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019), the

4    court dismissed a claim when a plaintiff "failed to plead a particularized injury by failing to plead

5    the water *he* purchased contained violative arsenic levels."  (emphasis in original).  There, the

6    plaintiff alleged that his bottle of water was contaminated with arsenic because the defendant

7    conducted independent testing that revealed the presence of arsenic above the FDA limit.  *Id*. at *1.

8    But nowhere in the complaint did the plaintiff allege that *his* individual bottle of water contained

9    arsenic above the FDA limit.  *Id*. at *5.  The court dismissed the complaint on the grounds that the

10   plaintiff failed to sufficiently plead a particularized injury, and therefore, lacked standing.  *Id*.

11       The Court should do the same here.  As alleged, the TAC requires impermissible

12   speculation.  Just because Plaintiffs' isolated testing allegedly revealed trace amounts of TOF, it

13   does not follow that the Tampons Plaintiffs purchased must also have contained TOF.  This Court

14   should not engage in such speculation.  *See Simon v. E. Kentucky Welfare Rights Org*., 426 U.S.

15   26, 45 (1976) (Plaintiffs have the burden to show they have standing and cannot rely on

16   "[s]peculative inferences . . . to connect their injury to the challenged actions."); *see also In re Boon*

17   *Glob. Ltd*., 923 F.3d 643, 650 (9th Cir. 2019) ("The party asserting jurisdiction bears the burden to

18   establish jurisdictional facts." (citation omitted)).

19       Such speculation is especially unwarranted here given that Plaintiffs cite sources in the TAC

20   demonstrating the ubiquity of TOF—including in dozens of naturally-occurring sources, such as

21   rainwater.  *See* RJN, Exh. B (explaining that organic fluorine "is sometimes detected in rainwater

22   at certain concentrations.  The concentrations are suggested to be too high to be explained as being

23   originated from artificial sources.").  The TAC also cites a source explaining that the production of

24   cotton requires a significant amount of water to clean and process into a usable form—nearly

25   10,000 liters for a single kilogram of cotton.[5]  Nothing in the TAC supports an inference that ***all***

26   

27   [5] *See* TAC RJN, Exh. C (cited in TAC ¶ 33, n. 14 (THE GUARDIAN, "Tampon wars: the battle to
     overthrow the Tampax empire," *available at*

28   https://www.theguardian.com/society/2020/feb/11/tampon-wars-the-battle-to-overthrow-the-
     tampax-empire)).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1  samples of the Tampons contain TOF when water itself "*sometimes*" contains TOF.  *See* TAC RJN,

2  Exhs. B & C (emphasis added).  Plaintiffs' conclusory allegations to contrary—*i.e.* that the TOF

3  they detected in their limited "samples" could not result from "incidental" exposure to TOF, TAC

4  ¶ 58—do nothing to salvage their speculative allegations of a particularized injury.  *See Dalewitz*,

5  2023 WL 6215329, at *3 (dismissing price premium claims alleging TOF exposed users to harm

6  because complaint "layer[ed] inference upon inference").  Because Plaintiffs have not alleged facts

7  supporting an inference that the specific Tampons Plaintiffs purchased contained TOF, Plaintiffs

8  lack standing and their claims should be dismissed.  *See Pels*, 2019 WL 5813422, at *5.

9    **C.    The Challenged Statements Would Not Mislead a Reasonable Consumer**

10     To state an affirmative misrepresentation claim under California's FAL, CLRA, or UCL,

11  Plaintiffs must plausibly allege that the challenged statements would mislead a reasonable

12  consumer.  *See Naimi v. Starbucks Corp.*, 2018 WL 11255596, at *7 (C.D. Cal. Feb. 28, 2018).

13  The reasonable consumer standard requires "more than a mere possibility that the advertisement

14  might conceivably be misunderstood by some few consumers viewing it in an unreasonable

15  manner."  *Id.* at *8 (citation omitted); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.

16  1995).  This test empowers the Court to "conclude as a matter of law that members of the public

17  are not likely to be deceived by the product packaging" and dismiss Plaintiffs' claims.  *Werbel v.

18  Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010); *Harris v. McDonald's Corp.*, 2021

19  WL 2172833 (N.D. Cal. Mar. 24, 2021) (dismissing UCL, CLRA, and FAL claims for failure to

20  allege "a factual foundation . . . as to what reasonable consumers do (or do not) believe").  Plaintiffs'

21  challenged statements make no representation as to the absence of compounds with a carbon-

22  fluorine bond, much less at trace amounts, and thus would not mislead a reasonable consumer.

23     **1.    The "Tampax Pure Cotton" and "100% ORGANIC COTTON CORE"**

24      **Statements Cannot Reasonably be Construed as Statements About the**

25      **Absence of Total Organic Fluorine.**

26     In their Third Amended Complaint, Plaintiffs allege that the Tampons' name, "Tampax

27  Pure Cotton*," and accompanying disclosures "contains 100% Organic Cotton Core" and "contains

28

100% Organic Cotton Outerwrap." would mislead a reasonable consumer to believe that the Tampons is "free from undisclosed chemicals or contaminants." TAC ¶ 8.  Not so.

    As an initial matter, the "Pure Cotton*" brand name is too vague and generalized to support any interpretation regarding the presence or absence of alleged undisclosed chemicals or contaminants—even assuming Plaintiffs plausibly alleged TOF is such a compound (it is not), *see supra*.  Courts regularly reject similar claims based on allegations that generalized representations bear any "cogent nexus" to a consumer's claimed subjective belief that a Tampons is free of undisclosed chemicals or contaminants.  *See, e.g.*, *Solis v. Coty, Inc.*, 2023 WL 2394640, at *7 (S.D. Cal. Mar. 7, 2023) (finding no plausible misrepresentation about any purported lack of PFAS in cosmetic product packaging identifying it as "safe," "sustainable," "suitable for sensitive skin," and "dermatologically tested"); *Castillo v. Prime Hydration LLC*, 2024 WL 4133815, at *6 (N.D. Cal. Sept. 9, 2024) (Martínez-Olguín, J.) (finding no plausible misrepresentation about any purported lack of PFAS from "general, vague statements about product superiority").  Moreover, the "Pure Cotton*" representation cannot reasonably be construed to make any representation as to the presence of chemicals in the Tampons because it is always accompanied by a disclaimer "contains 100% organic cotton core," alerting the consumer that the Tampons contain non-cotton ingredients beyond the core, which is also confirmed by the Tampons' ingredient list.  *See* TAC ¶ 41 (alleging, inter alia, the Tampons contains glycerin, paraffin and titanium dioxide); *Steiner v. Vi-Jon, Inc.*, 2024 WL 1181002, at *5 (N.D. Cal. Mar. 18, 2024) (Martínez-Olguín, J.) (plaintiffs cannot rely on "artful pleading" which "omits [an] asterisk" and "causes them to ignore necessary supplemental information"); *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *10 (N.D. Cal. Dec. 10, 2013) (dismissing, in part, plaintiff's false advertising claims concerning a diaper label touting its "soft organic cotton" because that phrase, in context, "does not suggest the absence of any other ingredient besides organic cotton"); *Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *4 (S.D. Cal. Sept. 11, 2015) (dismissing claim because protein powder sold with a label proclaiming "100% Whey" reasonably conveyed the notion that "the protein is from a single source, whey," not that "the entire contents of the container is protein," as reflected by other statements on the label).  Thus, the "Pure Cotton*" representation would not mislead any reasonable

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

consumer as to the presence or absence of undisclosed chemicals or contaminants—even assuming TOF is such a compound.

As for the representations that the Tampons contain a "100% organic cotton core" and "100% organic cotton outerwrap," Plaintiffs contend that these are misleading due to the alleged presence of an unknown amount of TOF in those components.  TAC ¶ 65; *see also* SAC ¶ 109 (alleging that "some of the individual components" contained more than 30 ppm TOF).  Even assuming the organic cotton core and organic cotton outerwrap were two of the components Plaintiffs allege contained more than 30 ppm, as explained above, amounts below 100 ppm are considered "trace" per Plaintiffs' own sources and the Court's prior order.  *See supra* Section III.A. Further, as explained above, the TAC and Plaintiffs' own sources indicate that TOF is ubiquitous and can be found in nature.  *See supra*.  As a matter of law, the detection in Tampons of some ubiquitous contaminant (especially in trace amounts like here) cannot provide a basis for a false advertising claim. *See, e.g.*, *Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *4 (N.D. Cal. Oct. 6, 2020) (rejecting argument that "reasonable consumers interpret the word natural to mean a food product that is completely free of any trace pesticides"); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) ("[A] reasonable consumer would not interpret the label 'natural' as warranting that the [p]roducts contain no amount of glyphosate"); *Axon v. Florida's Nat. Growers, Inc.,* 813 F. App'x 701, 705 (2d Cir. 2020) ("[T]he presence of glyphosate as a contaminant in Defendant's products, rather than an intentionally-added ingredient, bolsters the conclusion that a reasonable consumer, viewing the brand name 'Florida's Natural,' would not make assumptions regarding the presence or absence of trace amounts of glyphosate."); *In re General Mills Glyphosate Litig*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (deeming implausible the allegation that "Made with 100% Natural Whole Grain Oats" means that there is no trace of synthetic ingredient "or that a reasonable consumer would so interpret the label").  The alleged presence of trace amounts of TOF in the outerwrap and core thus cannot give rise to a claim that the Tampons representing those components as "100% organic cotton" is misleading.

The contention that "100% organic cotton" means the organic cotton components contain absolutely *no* undisclosed trace substance would hold P&G and other manufacturers to an

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

impossible standard of growing cotton in a vacuum unexposed to any other material, even air and water. Cotton, like everything on Earth, is itself partially made of molecular compounds and substances—specifically, 87–90% cellulose, 5–8% water, and 4–6% "natural impurities." ENCYCLOPAEDIA BRITANNICA ONLINE, "cotton," https://www.britannica.com/topic/cotton-fibre-and-plant (TAC RJN Exh. D). As explained above, the TAC cites a source that even rainwater may contain TOF, *see id.*, Exh. B. Courts regularly dismiss claims that interpret representations as promising the impossible. *See, e.g.*, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 883 (9th Cir. 2021) ("A reasonable consumer would not understand Trader Joe's label here as promising something that is impossible to find."); *Panelli v. Target Corp.*, 2024 WL 4596412, at *4 (S.D. Cal. Oct. 28, 2024) (rejecting Plaintiffs' claim that "800 thread count" statement was misleading because "[n]o reasonable consumer would interpret Defendant's 100% cotton bedsheet advertising and labeling 'as promising something that is impossible to find'" (citing *Moore*, 4 F.4th at 883)).

It is implausible that any reasonable consumer would interpret "100% organic cotton core" and "100% organic cotton outerwrap" to mean that those cotton components contain absolutely *no* trace amounts of any other substance. The packaging of the Tampons makes no representation that the organic cotton is free of *all* impurities or trace amounts of other substances. Instead, it truthfully represents that the cotton core and outerwrap are made of 100% organic cotton. *See Moore*, 4 F.4th at 883 (rejecting misrepresentation claim as to "100% New Zealand Manuka Honey" because "a reasonable honey consumer would know that it is impossible to produce honey that is derived exclusively from a single floral source" and "would generally know that it is impossible to exercise complete control over where bees forage down to each specific flower or plant"). The 100% organic cotton representations thus would not mislead a reasonable consumer as to the presence of trace amounts of TOF.

### 2. The "Best of Science and Nature" Statement is Non-Actionable Puffery.

The Tampons label's "BEST OF SCIENCE AND NATURE" statement is non-actionable puffery that likewise cannot support any false advertising claim. As a matter of law, no reasonable consumer may rely on marketing "claims [that] are either vague or highly subjective." *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

(citation omitted).  Such "exaggerated advertising, blustering, and boasting" are commonly known as "[p]uffing."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (citation omitted).  "Advertising which merely states in general terms that one product is superior is not actionable."  *Cook, Perkiss & Liehe, Inc.*, 911 F.2d at 246 (citation omitted); *Beshwate v. BMW of N. Am., LLC*, 2017 WL 6344451, at *11 (E.D. Cal. Dec. 12, 2017) ("Statements regarding the high quality of a product [are] . . . non-actionable puffery that no reasonable person could rely on").

Claims that a product is the "best of" a particular category are classic examples of puffery. *See, e.g.*, *Shaker v. Nature's Path Foods, In*c., 2013 WL 6729802, at *5 (C.D. Cal. Dec. 16, 2013) (deeming puffery a cereal box proclaiming it to be "the best of what we know about cereal gathered into a collection of four unique varieties"); *Michael Bros. v. Hewlett-Packard Co.*, 2006 WL 3093685, at *5 (N.D. Cal. Oct. 31, 2006) (deeming "top of the line" claims as "nothing more than subjective statements of the superiority of the product, . . . not objectively verifiable"); *Hackett v. Feeney*, 2011 WL 4007531, at *5 (D. Nev. Sept. 8, 2011) (treating "#1 Best Show in Vegas" statement as "simply exaggerated advertising which precludes reliance by consumers").  P&G marketing the Tampons as the "best of science and nature" boasts of high quality, without stating empirical facts that may be falsified or disproven.  It is thus classic puffery—a non-actionable, subjective statement of the Tampons' superiority that cannot anchor Plaintiffs' claims.

### D.    Plaintiffs Have Not Sufficiently Alleged Reliance

Plaintiffs' fraud-based allegations under California's FAL, CLRA, and UCL likewise fail for insufficient pleading.  *See Kearns*, 567 F.3d. at 1126.  Rule 9(b) requires that Plaintiffs plead facts identifying details about the specific misrepresentations upon which they ostensibly relied. *See, e.g.*, *Palmer v. Apple, Inc*., 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016) (deeming allegations insufficient under Rule 9(b) because plaintiff did not allege "which specific advertisements or statements he personally saw"); *Yumul v. Smart Balance, Inc*., 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (same).  Neither general nor conclusory allegations of reliance are sufficient as a matter of law.  *See, e.g.*, *Brown v. Madison Reed, Inc*., 2021 WL 3861457, at *1 (N.D. Cal. Aug. 30, 2021) (dismissing fraud-based claims despite plaintiffs' general allegation of

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

reliance on defendant's website and packaging that allegedly misrepresented the product as "'Free of ammonia,' 'resorcinol,' and 'PPD,'" because plaintiffs "fail[ed] to specifically allege which, if any, of those statements they actually saw and relied upon before deciding to purchase the [defendant's] products"); *Tabler v. Panera LLC*, 2019 WL 5579529, at *11 (N.D. Cal. Oct. 29, 2019) (deeming insufficient a "rote allegation that in deciding to [purchase the product], Plaintiff 'saw, relied upon, and reasonably believed' Defendant's 'representations that the Products were '100% clean' or 'clean'").

Plaintiffs fail to meet this standard. They lump together a hodgepodge of statements on the Tampons' packaging and social media characterizing aspects of the Tampons as "pure," "organic," and containing "nothing but the best ingredients," among other things. TAC ¶¶ 38–54. They allege generally that they "reviewed the products' labeling, packaging, and marketing materials, including the Pure and Organic Representations" before purchasing the Tampons. *Id.* ¶¶ 99, 106, 113. Such vague, unspecific, and self-serving allegations fail the requirements for the particularized pleading required by Rule 9(b). Because Plaintiffs "fail to allege that they saw or relied upon specific statements in deciding to purchase" the Tampons, and instead "only generally allege that they relied on . . . the packaging of the [Tampons] that stated it was," among other things, "pure," Plaintiffs fail to adequately plead reliance, warranting dismissal of their FAL, CLRA, and UCL claims. *See Brown*, 2021 WL 3861457, at *10; *see also Young v. Cree, Inc.*, 2021 WL 4749384, at *7 (N.D. Cal. Oct. 12, 2021) (granting defendant summary judgment based on lack of evidence on reliance: "Young's testimony that he saw or read certain statements by Cree when he purchased the products at issue is not enough, without more, to show a causal connection between them and his purchase of the LED bulbs.").

### E.    Plaintiffs' Unlawful Claim Also Fails Because Plaintiffs Fail to Allege FFDCA or CA FDCA Violations.

Plaintiffs also fail to plead facts supporting their claims that P&G engaged in "unlawful" business practices. *See* TAC ¶ 193. In other words, Plaintiffs do not plead facts showing that P&G violated another law. *See Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). As shown above, Plaintiffs fail to adequately allege that P&G violated the CLRA

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1   or FAL.  For similar reasons, Plaintiffs have also failed to plausibly (let alone with particularity)

2   allege that P&G has violated the Federal Food, Drug, and Cosmetic Act, 21 USC §§ 301, *et seq.*

3   ("FFDCA"), and its California analog, the Sherman Food, Drug, and Cosmetic Law, Cal. Health &

4   Safety Code §§ 110100, *et seq.* ("CA FDCA").  *See, e.g.*, *Herrington v. Johnson & Johnson*

5   *Consumer Companies, Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *9 (N.D. Cal. Sept. 1, 2010)

6   (dismissing FFDCA and CA FDCA claims where "Plaintiffs have not alleged that the levels of 1,4

7   dioxane and formaldehyde in Defendants' products' create a cognizable risk of injury to their

8   children"); *see also id.* (finding a defendant's bath product not "misbranded" under FFDCA and

9   CA FDCA because plaintiffs had only alleged "that Defendants' Products **may** contain the

10  substances" at issue, among other things (emphasis added)); TAC ¶ 193.  In short, Plaintiffs fail to

11  allege the Tampons are "adulterated" or "misbranded" under the FFDCA or CA FDCA because

12  they do not allege they contain TOF in any level linked to bodily harm. *See supra* Section III.A.

13          **F.      Plaintiffs Fail to State an Omission Claim Because They Fail to Allege that**

14                  **P&G Had a Duty to Disclose the Presence of Trace Amounts of TOF**

15          Plaintiffs' allegations also fail to state an omission claim that satisfies the heightened

16  pleading standard that governs them.  *See Kearns,* 567 F.3d. at 1124.  To state a claim for omissions

17  under the CLRA, UCL, or FAL, Plaintiffs must allege facts giving rise to an affirmative duty to

18  disclose.  A "defendant only has a duty to disclose when either (1) the defect at issue relates to an

19  unreasonable safety hazard or (2) the defect is material, central to the product's function."

20  *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022).

21          Here, P&G had no duty to disclose that the Tampons contained TOF because Plaintiffs

22  failed to allege any TOF in the Tampons was a "chemical[] or contaminant," let alone exposed

23  them to risk of harm.  *See Hayden*, 2024 WL 1643696, at *9 (no duty to disclose because "Plaintiff

24  has not pled that the level of cadmium found in the Products is liable to cause negative health

25  effects").  As such, any organic fluorine allegedly in the Tampons does not create an unreasonable

26  safety hazard.  The TAC does not and cannot allege that TOF in its own right poses any safety

27  issue.

28

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

1       Nor have Plaintiffs adequately alleged that the presence of organic fluorine is "central to

2   the product's function." *Hammerling*, 615 F. Supp. 3d at 1085.  "To satisfy the 'central function'

3   prong of this test, [a] [p]laintiff must establish that the defect renders the product 'incapable of use

4   by any consumer.'" *Hayden*, 2024 WL 1643696, at *10 (quoting *Hodsdon v. Mars, Inc.*, 891 F.3d

5   857, 865 (9th Cir. 2018)).  Plaintiff fails this test.   The alleged presence of organic fluorine

6   notwithstanding, Plaintiffs have failed to plausibly allege the Tampons did not function as intended

7   (*i.e.*, as a feminine hygiene device).  *See id.* ("central function" test not met because—despite

8   alleged heavy metals in flaxseed product, plaintiff "has not plausibly pled that the Products have

9   ceased to function as a food").

10      **G.      Plaintiffs' Unjust Enrichment Claim Fails for the Same Reasons**

11      The Court should also dismiss Plaintiffs' claim for unjust enrichment because it fails for the

12  same reasons as their deficient UCL, CLRA, and FAL claims.  Indeed, Plaintiffs explicitly aver

13  that their unjust enrichment claim rests on P&G's alleged "false and misleading representations

14  and omissions of material fact," which purportedly caused Plaintiffs to "los[e] money as a result of

15  paying" inflated prices for the Tampons.  TAC ¶¶ 214–15; *compare id.*, *with id.* ¶ 158 (count one:

16  alleging that the supposed "misrepresentations were material to Plaintiffs' . . . decision to . . . pay

17  a premium for the Products").  Because Plaintiffs do not adequately allege a false or misleading

18  representation, this claim, too, fails.  *See Kim v. Bluetriton Brands, Inc.*, 2024 WL 243343, at *2

19  (9th Cir. Jan. 23, 2024) ("Because all of Plaintiff's theories fail, she cannot show actionable

20  deception or wrongdoing required for an unjust enrichment claim."); *Chong v. Nestle Water N. Am.,*

21  *Inc.*, 2021 WL 4938128, at *1 (9th Cir. Oct. 22, 2021) (no unjust enrichment where plaintiff "has

22  not alleged a violation of the UCL, FAL, or CLRA").

23      Separately, the Court may dismiss these claims because Plaintiffs fail to allege they lack an

24  adequate remedy at law to invoke equity.  *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d

25  834, 844 (9th Cir. 2020) (explaining that a plaintiff "must establish that she lacks an adequate

26  remedy at law before securing equitable restitution for past harm under the UCL and CLRA");

27  *Zeller v. Optavia, LLC*, 2022 WL 17858032, at *7 (S.D. Cal. Dec. 22, 2022) (dismissing unjust

28  enrichment claim because plaintiffs "have not pled that they lack an adequate remedy at law" in

1   their CLRA claim).  Plaintiffs in this case likewise seek equitable relief without pleading an

2   inadequate remedy at law.  They simply bemoan the difficulty of pursuing their claims in the

3   absence of class certification.  TAC ¶ 151.  But that is not the same thing.

4        **H.**      **Plaintiffs Cannot Represent Out-of-State Class Members Because There are**

5                    **Substantial Variations in State Laws**

6        To the extent any claims could survive dismissal, the Court should at least dismiss the

7   claims of all absent members of the putative classes who purchased the Tampons outside of

8   California and invoke the laws of other states.  Count I of the TAC purports to bring a "Multi-state"

9   class asserting claims under the consumer fraud statutes of several states in addition to California.

10  TAC ¶¶ 154–62.  The Multistate class also purports to encompass all persons who purchased the

11  Tampons in ten states.  *Id*. ¶ 143.  Plaintiffs even seek to represent a "Nationwide Class" to bring

12  unjust enrichment claims against P&G based on purchases of the Tampons in all fifty states.  *Id*.

13  ¶ 213–19.  Plaintiffs—just three California residents who purchased the Tampons in California (*id*.

14  ¶¶ 97–117)—cannot adequately represent these absent class members.

15       Courts may dismiss claims when it is apparent that the putative class representatives could

16  never satisfy Rule 23's certification requirements. For example, in *Phan v. Sargento Foods, Inc*.,

17  2021 WL 2224260 (N.D. Cal. June 2, 2021), the plaintiff brought claims of unjust enrichment and

18  the consumer protection laws of ten states against a dairy distributor that used an allegedly

19  misleading "no antibiotics" label.  *Id*. at *1–2.  The court dismissed the nationwide claims "because

20  the laws of all 50 states are implicated, [and] Plaintiff has not sufficiently shown that . . . a class

21  action would be manageable."  *Id*. at *8.  Because "the issue is purely legal in nature," the Court

22  ruled it made no sense "to wait until class certification proceedings to resolve it given the burdens

23  class certification and other class-related discovery imposes on the parties."  *Id*. at *6. The court

24  likewise dismissed the ten subclasses.  *Id*. *13–14; *see also Sultanis v. Champion Petfoods USA

25  Inc*., 2021 WL 3373934, at *7–8 (N.D. Cal. Aug. 3, 2021) (dismissing nationwide unjust

26  enrichment and multistate consumer fraud claims brought by a California plaintiff due to

27  "substantial variations in the consumer protection laws," among other things).

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO

1

2

3

4

5

6

7

8

The same result follows in this case.  Plaintiffs allege they reside, made their purchases, and suffered injury in California.  *See* TAC ¶¶ 97–117.  Yet they attempt to represent classes of other people in no fewer than ten states.  The Court has broad power to adjudicate the purely legal question about the propriety of doing so now, and reject it due to material differences in the applicable laws, including intent, reliance, causation and statute of limitations.  *See Sultanis*, 2021 WL 3373934, at *7 (comparing consumer fraud statutes). In short, the Court may dismiss the Nationwide (Count V) and Multistate (Count I) claims under Rule 23, the lack of Article III standing, or both.

9

### IV.    <u>CONCLUSION</u>

10

11

12

13

For the foregoing reasons, this Court should grant P&G's Motion to Dismiss Plaintiffs' Third Amended Complaint.  Moreover, it should do so with prejudice because the infirmities in the TAC demonstrate that permitting further amendment would be futile.  *See Whitaker*, 2013 WL 1149789, at *2.

14

Dated: December 9, 2024                              Respectfully submitted,

15

16

<u>s/ Adam R. Fox</u>
Adam R. Fox

17

SQUIRE PATTON BOGGS (US) LLP
555 South Flower St, Suite 3100

18

Los Angeles, CA 90071
Telephone: (213) 624-2500

19

adam.fox@squirepb.com

20

Scott A. Kane (*pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP

21

201 E. Fourth St., Suite 1900
Cincinnati, OH 45202

22

Telephone: (513) 361-1200
scott.kane@squirepb.com

23

24

*Attorneys for Defendant*
*The Procter & Gamble Company*

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' THIRD AM. COMPLAINT
3:23-CV-00765-AMO